JOHN P. REITMAN (State Bar No. 80579)
jreitman@landaufirm.com
MONICA RIEDER (State Bar No. 263250)
mrieder@landaufirm.com
LANDAU LAW LLP
141 South Windsor Blvd.
Los Angeles, California 90004
Telephone: (310) 557-0050
Facsimile: (310) 557-0056

Special Litigation Attorneys for
Plaintiff Richard A. Marshack,
Chapter 7 Trustee for Eagan Avenatti, LLP

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>EAGAN AVENATTI, LLP,<br><br>Debtor | Case No. 8:19-bk-13560-SC<br><br>Chapter 7<br><br>Adv. No. 8:20-ap-01150-SC |
| RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP,<br><br>Plaintiff,<br><br>v.<br><br>HONDA AIRCRAFT COMPANY, LLC, a Delaware limited liability company,<br><br>Defendant. | **TRUSTEE'S SUPPLEMENTAL STATEMENT REGARDING DECLARATION OF RITA GALVAN AND REQUEST FOR ORDER COMPELLING RESPONSES TO QUESTIONS**<br><br>**Hearing Date and Time:**<br>Date: May 30, 2023<br>Time: 11:00 a.m.<br>Place: Courtroom 5C<br>411 West Fourth Street<br>Santa Ana, CA 92701-4593 |

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Plaintiff Richard A. Marshack, Chapter 7 trustee (the "Trustee") for Eagan Avenatti, LLP

2    ("EA"), hereby submits this supplemental statement and request regarding a declaration provided

3    to the Trustee on May 16, 2023, by the Internal Revenue Service (the "IRS"), in connection with

4    the Trustee's pending *Motion for Issuance of an Order to Show Cause re Contempt Against*

5    *Internal Revenue Service for Failure to Comply with Document and Deposition Subpoenas* (the

6    "Motion").  The Motion seeks, among other things, to compel the IRS to provide sworn testimony

7    sufficient to fully answer the list of questions (the "Listed Questions") provided to the IRS on

8    April 16, 2023, and attached as Exhibit G to the Declaration of Monica Rieder in support of the

9    Motion [Docket No. 48], pursuant to a deposition subpoena served on the IRS on March 9, 2022

10   (the "Deposition Subpoena").

11    On May 16, 2023, the IRS provided to the Trustee a declaration of Rita Galvan, identified

12   as a Bankruptcy Specialist for the IRS (the "Galvan Declaration").  A true and correct copy of the

13   Galvan Declaration is attached hereto as **Exhibit L**.  The Galvan Declaration purports to address

14   Questions 1 through 17 of the Listed Questions.[1]  However, as set forth below, the majority of the

15   "answers" provided by Ms. Galvan do not actually answer the questions – to the point where it

16   appears that the IRS has not made a good faith attempt to answer those questions, and there is no

17   reason to believe that a subsequent declaration from Ms. Galvan will rectify the issues identified

18   below.  (Additionally, some of the issues arise from the declaration format itself, which prevents

19   the Trustee from asking the type of follow-up questions that could easily addressed in a deposition

20   setting – one of the reasons why the Trustee sought a live deposition, to which he is entitled under

21   the applicable rules, in the first place.  Federal Rule of Civil Procedure 30(b)(6), under which the

22   Deposition Subpoena was issued, provides that the witness(es) designated by the organization

23   "must testify about information known or reasonably available to the organization."  This means

24   that the designated witness(es) must read and be familiar with the contents of such information,

25   and if the volume of that information is such that the deponent is not able to fully remember that

26

27   [1] To date, the IRS has made no attempt to address Listed Questions 18 through 26, despite its
representations to the Trustee (and to the Court in its opposition to the Motion) that it would provide

28   declarations addressing all of the Listed Questions by May 8, 2023.

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  information, nothing prohibits the deponent from bringing a copy of that information to refresh

2  her/his recollections.)

3          Accordingly, the Trustee respectfully requests that the Court enter an order requiring Ms.

4  Galvan to appear, at a date and time convenient for the Court, at a deposition to be conducted in

5  the United States Bankruptcy Court in Santa Ana (so that the parties can obtain prompt rulings on

6  objections to questions posed during the deposition), and fully answer all of the below questions.[2]

7

8  **Introductory Statement from Galvan Declaration:**

9  I am employed as a Bankruptcy Specialist for the Internal Revenue Service (hereinafter "IRS"). In

10 that capacity, I am familiar with the bankruptcy case involving Eagan Avenatti, LLC, Case No.

11 8:19-bk-13560-SC, and the related adversary matter involving Gallo Builders, Inc., Case No. 8:20-

12 ap-01060-SC.

13 **Trustee's Response to Introductory Statement:**

14 Additional information is needed to lay the foundation for Ms. Galvan's competency to testify

15 regarding the matters in the declaration – specifically, how long Ms. Galvan has been employed as

16 a Bankruptcy Specialist, what education she has had, and what training Ms. Galvan had to qualify

17 as a Bankruptcy Specialist for the IRS.  Additionally, Ms. Galvan must confirm that she is familiar

18 with the above-captioned adversary proceeding.

19 **Question 1(a):**

20 With regard to the late filing penalty of $4,680 listed on USA_AVE0002.

21 It appears that penalty would have been incurred in increments of $390 per month on the 16th of

22 each month from March 16, 2012, through February 16, 2013. Is that correct? If not, when was

23 each portion of the penalty incurred?

24 **Answer to Question 1(a) from Galvan Declaration:**

25 The penalty accrues pursuant to statute. 26 U.S.C 6698(a) states that for each month, or fraction

26 thereof, in which a partnership fails to file a return of partnership income, as defined by 26 USC

27

28 
LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[2]  The below list excludes the few questions that were satisfactorily answered by the Galvan Declaration – consisting almost entirely of questions regarding return filing deadlines.

6031, a penalty shall accrue, not to exceed 12 months. The amount of the penalty which accrues each month is $195 multiplied by the number of persons who were partners in the partnership during any part of the taxable year.

**Trustee's Response Regarding Question 1(a):**

The "answer" is non-responsive – the question asks for the dates on which penalties were incurred, and the "answer" does not provide any dates.  The Federal Rules permit a witness to refuse to answer a deposition question only in very limited circumstances, none of which are present here. Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  Accordingly, Ms. Galvan must provide the dates for which the question asks.

**Question 1(c):**

Did EA's failure to file its 2011 1065 return between February 2013 and March 2014 (USA_AVE0025, USA_AVE0031) or June 2015 (USA_AVE0002) hinder or delay the IRS in collecting or receiving that penalty?

**Answer to Question 1(c) from Galvan Declaration:**

This question is not answerable as constituted.

EA's failure to timely file its 2011 Form 1065 return is the basis for the assessment of the penalty.

**Trustee's Response Regarding Question 1(c):**

The "answer" is non-responsive – the question asks for confirmation or denial of the proposition that EA's substantial delay in filing a return hindered or delayed the IRS in collecting or receiving the associated late filing penalty, and the "answer" not only fails but refuses to provide that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

Landau Law LLP
Attorneys At Law
Los Angeles, California

3

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   ordered by the court, or to present a motion under Rule 30(d)(3).").  Accordingly, Ms. Galvan

2   must provide the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

3   **Question 1(d):**

4   Did EA's failure to make any payment on the penalty between April 2012 and September 2017

5   hinder or delay the IRS in collecting or receiving that penalty?

6   **Answer to Question 1(d) from Galvan Declaration:**

7   It would be speculative on the part of the IRS to opine on whether EA's failure to make payments

8   "hindered or delayed" the collection or receipt of the penalty amount.

9   **Trustee's Response Regarding Question 1(d):**

10  The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

11  that EA's substantial delay in paying a penalty hindered or delayed the IRS in collecting or

12  receiving that penalty, and the "answer" not only fails but refuses to provide that confirmation or

13  denial.  The Federal Rules permit a witness to refuse to answer a deposition question only in very

14  limited circumstances, none of which are present here. Fed. R. Civ. P. 30(c)(2) ("An objection at

15  the time of the examination . . . must be noted on the record, but the examination still proceeds;

16  the testimony is taken subject to any objection.  A person may instruct a deponent not to answer

17  only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to

18  present a motion under Rule 30(d)(3).").  An objection that a question allegedly calls for an

19  opinion or speculation does not permit the witness not to answer the question.  *See, e.g., McCoy v.*

20  *City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D. Cal. Sep. 26, 2022) ("The only

21  permissible basis for . . . instructions not to answer was to preserve a privilege. . . . [O]bjections

22  [like] . . . calling for improper opinion . . . [or] speculation . . . . are patently improper grounds for

23  instructing a witness not to answer.").  In any event, no opinion or speculation is required – the

24  IRS is being asked a simple question about the actual effect of an occurrence set forth in the

25  documents the IRS provided.[3]  Accordingly, Ms. Galvan must provide the confirmation or denial

26

27  [3] While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered" and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-

28

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    (essentially, a "yes" or "no") for which the question asks.

2    **Question 2(a):**

3    With regard to the late filing penalty of $7,020 listed on USA_AVE0007:

4    It appears that penalty would have been incurred in increments of $585 per month on the 16th of

5    each month from March 16, 2013, through February 16, 2014. Is that correct? If not, when was

6    each portion of the penalty incurred?

7    **Answer to Question 2(a) from Galvan Declaration:**

8    The penalty accrues pursuant to statute 26 U.S.C 6698(a) states that for each month, or fraction

9    thereof, in which a partnership fails to file a return of partnership income, as defined by 26 USC

10   6031, a penalty shall accrue, not to exceed 12 months. The amount of the penalty which accrues

11   each month is $195 multiplied by the number of persons who were partners in the partnership

12   during any part of the taxable year.

13   **Trustee's Response Regarding Question 2(a):**

14   The "answer" is non-responsive – the question asks for the dates on which penalties were incurred,

15   and the "answer" does not provide any dates.  The Federal Rules permit a witness to refuse to

16   answer a deposition question only in very limited circumstances, none of which are present here.

17   Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the

18   record, but the examination still proceeds; the testimony is taken subject to any objection.  A

19   person may instruct a deponent not to answer only when necessary to preserve a privilege, to

20   enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).").

21   Accordingly, Ms. Galvan must provide the dates for which the question asks.

22   **Question 2(b):**

23   Did EA's failure to file its 2012 1065 return between February 2014 and October 2014 hinder or

24   delay the IRS in collecting or receiving that penalty?

25   / / /

26   ───────────────────────────

27   webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to

28   cause to be slower or to occur more slowly than normal").

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Answer to Question 2(b) from Galvan Declaration:**

This question is not answerable as constituted. EA's failure to timely file its 2012 Form 1065 return is the basis for the assessment of the penalty.

**Trustee's Response Regarding Question 2(b):**

The "answer" is non-responsive – the question asks for confirmation or denial of the proposition that EA's substantial delay in filing a return hindered or delayed the IRS in collecting or receiving the associated late filing penalty, and the "answer" not only fails but refuses to provide that confirmation or denial. The Federal Rules permit a witness to refuse to answer a deposition question only in very limited circumstances, none of which are present here. Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."). Accordingly, Ms. Galvan must provide the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

**Question 2(c):**

Did EA's failure to make any payment on the penalty between April 2013 and September 2017 hinder or delay the IRS in collecting or receiving that penalty?

**Answer to Question 2(c) from Galvan Declaration:**

It would be speculative on the part of the IRS to opine on whether EA's failure to make payments "hindered or delayed" the collection or receipt of the penalty amount.

**Trustee's Response Regarding Question 2(c):**

The "answer" is non-responsive – the question asks for confirmation or denial of the proposition that EA's substantial delay in paying a penalty hindered or delayed the IRS in collecting or receiving that penalty, and the "answer" not only fails but refuses to provide that confirmation or denial. The Federal Rules permit a witness to refuse to answer a deposition question only in very limited circumstances, none of which are present here. Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. A person may instruct a deponent not to answer

1    only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to

2    present a motion under Rule 30(d)(3).").  An objection that a question allegedly calls for an

3    opinion or speculation does not permit the witness not to answer the question.  *See, e.g., McCoy v.*

4    *City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D. Cal. Sep. 26, 2022) ("The only

5    permissible basis for . . . instructions not to answer was to preserve a privilege. . . . [O]bjections

6    [like] . . . calling for improper opinion . . . [or] speculation . . . . are patently improper grounds for

7    instructing a witness not to answer.").  In any event, no opinion or speculation is required – the

8    IRS is being asked a simple question about the actual effect of an occurrence set forth in the

9    documents the IRS provided.[4]  Accordingly, Ms. Galvan must provide the confirmation or denial

10   (essentially, a "yes" or "no") for which the question asks.

11   **Question 5(b):**

12   [Regarding the return due and taxes owed in connection with the 941 return for the quarter ending

13   September 30, 2013 (USA_AVE0084, USA_AVE0085):]

14   By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

15   **Answer to Question 5(b) from Galvan Declaration:**

16   Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees,

17   depending on the day of the payment, the deposit would be due on the following Wednesday or

18   Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment

19   tax deposit on those payments would be due the following Wednesday. If EA paid its employees

20   on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those

21   payments would be due on the following Friday. Therefore, the last deposit for the quarter would

22   be due three business days after the end of the final semi-weekly payment period in which EA

23   paid its employees.

24

25   ---

[4]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"

26   and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary
     meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-
     webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold

27   back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
     webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to

28   cause to be slower or to occur more slowly than normal").

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Trustee's Response Regarding Question 5(b):**

The "answer" is non-responsive – the question asks for a final payment due date for the quarter, and the "answer" does not provide a date.  The Federal Rules permit a witness to refuse to answer a deposition question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  Accordingly, Ms. Galvan must provide the date for which the question asks.

**Question 5(c):**

Did EA's failure to file the return between the filing deadline and June 23, 2014, hinder or delay the IRS in collecting or receiving money owed to it?

**Answer to Question 5(c) from Galvan Declaration:**

It would be speculative on the part of the IRS to opine on whether EA's failure to file its return "hindered or delayed" the collection or receipt of the "money owed to it".

**Trustee's Response Regarding Question 5(c):**

The "answer" is non-responsive – the question asks for confirmation or denial of the proposition that EA's substantial delay in filing a quarterly return hindered or delayed the IRS in collecting or receiving amounts due in connection with that quarter, and the "answer" not only fails but refuses to provide that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question allegedly calls for an opinion or speculation does not permit the witness not to answer the question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D. Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

1   a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

2   patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

3   speculation is required – the IRS is being asked a simple question about the actual effect of an

4   occurrence set forth in the documents the IRS provided.[5]  Accordingly, Ms. Galvan must provide

5   the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

6   **Question 5(d):**

7   Did EA's failure to make the final deposit/tax payment until December 5, 2013, hinder or delay

8   the IRS in collecting or receiving money owed to it?

9   **Answer to Question 5(d) from Galvan Declaration:**

10  It would be speculative on the part of the IRS to opine on whether EA's failure to make payments

11  "hindered or delayed" the collection or receipt of the "money owed to it".

12  **Trustee's Response Regarding Question 5(d):**

13  The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

14  that EA's delay in making a payment owed to the IRS hindered or delayed the IRS in collecting or

15  receiving the amount of that payment, and the "answer" not only fails but refuses to provide that

16  confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition

17  question only in very limited circumstances, none of which are present here. Fed. R. Civ. P.

18  30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the

19  examination still proceeds; the testimony is taken subject to any objection.  A person may instruct

20  a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

21  ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question

22  allegedly calls for an opinion or speculation does not permit the witness not to answer the

23  question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

24

25  [5]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
    and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary

26  meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-
    webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold

27  back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
    webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to

28  cause to be slower or to occur more slowly than normal").

9

Landau Law LLP
Attorneys At Law
Los Angeles, California

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

2  a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

3  patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

4  speculation is required – the IRS is being asked a simple question about the actual effect of an

5  occurrence set forth in the documents the IRS provided.[6]  Accordingly, Ms. Galvan must provide

6  the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

7  **Question 5(e):**

8  Did EA's failure to make any voluntary payment on the associated penalties and interest hinder or

9  delay the IRS in collecting or receiving those amounts?

10  **Answer to Question 5(e) from Galvan Declaration:**

11  It would be speculative on the part of the IRS to opine on whether EA's failure to make payments

12  "hindered or delayed" the collection or receipt of the penalty or interest amounts.

13  **Trustee's Response Regarding Question 5(e):**

14  The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

15  that EA's failure to make any voluntary payments on penalty and interest amounts (which were,

16  according to the IRS' documents, ultimately collected only via levy) hindered or delayed the IRS

17  in collecting or receiving those amounts, and the "answer" not only fails but refuses to provide

18  that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition

19  question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P.

20  30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the

21  examination still proceeds; the testimony is taken subject to any objection.  A person may instruct

22  a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

23  ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question

24

25  [6] While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary

26  meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-
webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold

27  back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to

28  cause to be slower or to occur more slowly than normal").

10

1  allegedly calls for an opinion or speculation does not permit the witness not to answer the

2  question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

3  Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

4  a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

5  patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

6  speculation is required – the IRS is being asked a simple question about the actual effect of an

7  occurrence set forth in the documents the IRS provided.[7]  Accordingly, Ms. Galvan must provide

8  the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

9  **Question 6(a):**

10  Regarding the taxes owed in connection with the 941 return for the quarter ending December 31,

11  2013 (USA_AVE0086, USA_AVE0087):

12  By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

13  **Answer to Question 6(a) from Galvan Declaration:**

14  Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees,

15  depending on the day of the payment, the deposit would be due on the following Wednesday or

16  Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment

17  tax deposit on those payments would be due the following Wednesday. If EA paid its employees

18  on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those

19  payments would be due on the following Friday. Therefore, the last deposit for the quarter would

20  be due three business days after the end of the final semi-weekly payment period in which EA

21  paid its employees.

22  **Trustee's Response Regarding Question 6(a):**

23  The "answer" is non-responsive – the question asks for a final payment due date for the quarter,

24

---

25  [7]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary

26  meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-
webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold

27  back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to

28  cause to be slower or to occur more slowly than normal").

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

and the "answer" does not provide a date.  The Federal Rules permit a witness to refuse to answer a deposition question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  Accordingly, Ms. Galvan must provide the date for which the question asks.

**Question 6(b):**

Did EA's failure to make the majority of the deposits/tax payments until March 31, 2014, and April 16, 2014, hinder or delay the IRS in collecting or receiving money owed to it?

**Answer to Question 6(b) from Galvan Declaration:**

It would be speculative on the part of the IRS to opine on whether EA's failure to make payments "hindered or delayed" the collection or receipt of the "money owed to it".

**Trustee's Response Regarding Question 6(b):**

The "answer" is non-responsive – the question asks for confirmation or denial of the proposition that EA's delay in making payments owed to the IRS hindered or delayed the IRS in collecting or receiving the amounts of those payments, and the "answer" not only fails but refuses to provide that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question allegedly calls for an opinion or speculation does not permit the witness not to answer the question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D. Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

speculation is required – the IRS is being asked a simple question about the actual effect of an occurrence set forth in the documents the IRS provided.[8]  Accordingly, Ms. Galvan must provide the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

**Question 7(a):**

Regarding the taxes owed in connection with the 941 return for the quarter ending March 31, 2014 (USA_AVE0088, USA_AVE0089):

By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

**Answer to Question 7(a) from Galvan Declaration:**

Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday. If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday. Therefore, the last deposit for the quarter would be due three business days after the end of the final semi-weekly payment period in which EA paid its employees.

**Trustee's Response Regarding Question 7(a):**

The "answer" is non-responsive – the question asks for a final payment due date for the quarter, and the "answer" does not provide a date.  The Federal Rules permit a witness to refuse to answer a deposition question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

---

[8]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered" and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to cause to be slower or to occur more slowly than normal").

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  Accordingly, Ms.

2  Galvan must provide the date for which the question asks.

3  **Question 7(b):**

4  Did EA's failure to make any deposit/tax payment until May 28, 2014, hinder or delay the IRS in

5  collecting or receiving money owed to it?

6  **Answer to Question 7(b) from Galvan Declaration:**

7  It would be speculative on the part of the IRS to opine on whether EA's failure to make payments

8  "hindered or delayed" the collection or receipt of the "money owed to it."

9  **Trustee's Response Regarding Question 7(b):**

10  The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

11  that EA's delay in making payments owed to the IRS hindered or delayed the IRS in collecting or

12  receiving the amounts of those payments, and the "answer" not only fails but refuses to provide

13  that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition

14  question only in very limited circumstances, none of which are present here. Fed. R. Civ. P.

15  30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the

16  examination still proceeds; the testimony is taken subject to any objection.  A person may instruct

17  a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

18  ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question

19  allegedly calls for an opinion or speculation does not permit the witness not to answer the

20  question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

21  Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

22  a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

23  patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

24  speculation is required – the IRS is being asked a simple question about the actual effect of an

25  occurrence set forth in the documents the IRS provided.[9]  Accordingly, Ms. Galvan must provide

26  

27  [9]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary

28  meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-

1    the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

2    **Question 7(c):**

3    Did EA's failure to make any voluntary payment on the associated penalties and interest hinder or

4    delay the IRS in collecting or receiving those amounts?

5    **Answer to Question 7(c) from Galvan Declaration:**

6    It would be speculative on the part of the IRS to opine on whether EA's failure to make payments

7    "hindered or delayed" the collection or receipt of the penalty or interest amounts.

8    **Trustee's Response Regarding Question 7(c):**

9    The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

10   that EA's failure to make any voluntary payments on penalty and interest amounts (which were,

11   according to the IRS' documents, ultimately collected only via levy) hindered or delayed the IRS

12   in collecting or receiving those amounts, and the "answer" not only fails but refuses to provide

13   that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition

14   question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P.

15   30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the

16   examination still proceeds; the testimony is taken subject to any objection.  A person may instruct

17   a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

18   ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question

19   allegedly calls for an opinion or speculation does not permit the witness not to answer the

20   question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

21   Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

22   a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

23   patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

24   speculation is required – the IRS is being asked a simple question about the actual effect of an

25

26   ────────────────

27   webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold
     back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
     webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to

28   cause to be slower or to occur more slowly than normal").

Landau Law LLP
Attorneys At Law
Los Angeles, California

1   occurrence set forth in the documents the IRS provided.[10]  Accordingly, Ms. Galvan must provide

2   the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

3   **Question 8(a):**

4   Regarding the taxes owed in connection with the 941 return for the quarter ending June 30, 2014

5   (USA_AVE0090, USA_AVE0091):

6   By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

7   **Answer to Question 8(a) from Galvan Declaration:**

8   Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees,

9   depending on the day of the payment, the deposit would be due on the following Wednesday or

10  Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment

11  tax deposit on those payments would be due the following Wednesday. If EA paid its employees

12  on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those

13  payments would be due on the following Friday. Therefore, the last deposit for the quarter would

14  be due three business days after the end of the final semi-weekly payment period in which EA

15  paid its employees.

16  **Trustee's Response Regarding Question 8(a):**

17  The "answer" is non-responsive – the question asks for a final payment due date for the quarter,

18  and the "answer" does not provide a date.  The Federal Rules permit a witness to refuse to answer

19  a deposition question only in very limited circumstances, none of which are present here.  Fed. R.

20  Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but

21  the examination still proceeds; the testimony is taken subject to any objection.  A person may

22  instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

23  limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  Accordingly, Ms.

24

25  ---

[10]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
26  and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary
    meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-
    webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold
27  back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
    webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to
28  cause to be slower or to occur more slowly than normal").

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Galvan must provide the date for which the question asks.

2    **Question 8(b):**

3    Did EA's failure to make the final deposit/tax payment until July 7, 2014, hinder or delay the IRS

4    in collecting or receiving money owed to it?

5    **Answer to Question 8(b) from Galvan Declaration:**

6    It would be speculative on the part of the IRS to opine on whether EA's failure to make payments

7    "hindered or delayed" the collection or receipt of the "money owed to it".

8    **Trustee's Response Regarding Question 8(b):**

9    The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

10    that EA's delay in making a payment owed to the IRS hindered or delayed the IRS in collecting or

11    receiving the amount of that payment, and the "answer" not only fails but refuses to provide that

12    confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition

13    question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P.

14    30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the

15    examination still proceeds; the testimony is taken subject to any objection.  A person may instruct

16    a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

17    ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question

18    allegedly calls for an opinion or speculation does not permit the witness not to answer the

19    question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

20    Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

21    a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

22    patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

23    speculation is required – the IRS is being asked a simple question about the actual effect of an

24    occurrence set forth in the documents the IRS provided.[11]  Accordingly, Ms. Galvan must provide

25    _____

26    [11]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary

27    meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-
webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold

28    back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-

1  the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

2  **Question 8(c):**

3  Did EA's failure to make any voluntary payment on the associated penalties and interest hinder or

4  delay the IRS in collecting or receiving those amounts?

5  **Answer to Question 8(c) from Galvan Declaration:**

6  It would be speculative on the part of the IRS to opine on whether EA's failure to make payments

7  "hindered or delayed" the collection or receipt of the penalty or interest amounts.

8  **Trustee's Response Regarding Question 8(c):**

9  The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

10  that EA's failure to make any voluntary payments on penalty and interest amounts (which were,

11  according to the IRS' documents, ultimately collected only via levy) hindered or delayed the IRS

12  in collecting or receiving those amounts, and the "answer" not only fails but refuses to provide

13  that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition

14  question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P.

15  30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the

16  examination still proceeds; the testimony is taken subject to any objection.  A person may instruct

17  a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

18  ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question

19  allegedly calls for an opinion or speculation does not permit the witness not to answer the

20  question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

21  Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

22  a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

23  patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

24  speculation is required – the IRS is being asked a simple question about the actual effect of an

25  occurrence set forth in the documents the IRS provided.[12]  Accordingly, Ms. Galvan must provide

26  _____

27  webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to
cause to be slower or to occur more slowly than normal").

28  [12]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"

Landau Law LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

2    **Question 9(b):**

3    [Regarding the return due and taxes owed in connection with the 941 return for the quarter ending

4    December 31, 2014 (USA_AVE0094, USA_AVE0095):]

5    By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

6    **Answer to Question 9(b) from Galvan Declaration:**

7    Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees,

8    depending on the day of the payment, the deposit would be due on the following Wednesday or

9    Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment

10    tax deposit on those payments would be due the following Wednesday. If EA paid its employees

11    on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those

12    payments would be due on the following Friday. Therefore, the last deposit for the quarter would

13    be due three business days after the end of the final semi-weekly payment period in which EA

14    paid its employees.

15    **Trustee's Response Regarding Question 9(b):**

16    The "answer" is non-responsive – the question asks for a final payment due date for the quarter,

17    and the "answer" does not provide a date.  The Federal Rules permit a witness to refuse to answer

18    a deposition question only in very limited circumstances, none of which are present here.  Fed. R.

19    Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but

20    the examination still proceeds; the testimony is taken subject to any objection.  A person may

21    instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

22    limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  Accordingly, Ms.

23    Galvan must provide the date for which the question asks.

24    / / /

25    _____

26    and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary
meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-
webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold
27    back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to
28    cause to be slower or to occur more slowly than normal").

1  **Question 9(c):**

2  Did EA's failure to file the return between the filing deadline and May 18, 2015, hinder or delay

3  the IRS in collecting or receiving money owed to it?

4  **Answer to Question 9(c) from Galvan Declaration:**

5  It would be speculative on the part of the IRS to opine on whether EA's failure to file its return

6  "hindered or delayed" the collection or receipt of the "money owed to it".

7  **Trustee's Response Regarding Question 9(c):**

8  The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

9  that EA's substantial delay in filing a quarterly return hindered or delayed the IRS in collecting or

10  receiving amounts due in connection with that quarter, and the "answer" not only fails but refuses

11  to provide that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a

12  deposition question only in very limited circumstances, none of which are present here.  Fed. R.

13  Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but

14  the examination still proceeds; the testimony is taken subject to any objection.  A person may

15  instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

16  limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a

17  question allegedly calls for an opinion or speculation does not permit the witness not to answer the

18  question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

19  Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

20  a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

21  patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

22  speculation is required – the IRS is being asked a simple question about the actual effect of an

23  occurrence set forth in the documents the IRS provided.[13]  Accordingly, Ms. Galvan must provide

24

25  [13]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary

26  meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-
webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold

27  back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to

28  cause to be slower or to occur more slowly than normal").

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

2  **Question 9(d):**

3  Did EA's failure to make the final deposit/tax payment until August or September 2017, hinder or

4  delay the IRS in collecting or receiving money owed to it?

5  **Answer to Question 9(d) from Galvan Declaration:**

6  It would be speculative on the part of the IRS to opine on whether EA's failure to make payments

7  "hindered or delayed" the collection or receipt of the "money owed to it".

8  **Trustee's Response Regarding Question 9(d):**

9  The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

10  that EA's delay in making a payment owed to the IRS hindered or delayed the IRS in collecting or

11  receiving the amount of that payment, and the "answer" not only fails but refuses to provide that

12  confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition

13  question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P.

14  30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the

15  examination still proceeds; the testimony is taken subject to any objection.  A person may instruct

16  a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

17  ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question

18  allegedly calls for an opinion or speculation does not permit the witness not to answer the

19  question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

20  Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

21  a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

22  patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

23  speculation is required – the IRS is being asked a simple question about the actual effect of an

24  occurrence set forth in the documents the IRS provided.[14]  Accordingly, Ms. Galvan must provide

---

[14] While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered" and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

2  **Question 9(e):**

3  Did EA's failure to pay the associated penalties and interest until August or September 2017

4  hinder or delay the IRS in collecting or receiving those amounts?

5  **Answer to Question 9(e) from Galvan Declaration:**

6  It would be speculative on the part of the IRS to opine on whether EA's failure to pay the

7  associated penalties and interest "hindered or delayed" the collection or receipt of those amounts.

8  **Trustee's Response Regarding Question 9(e):**

9  The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

10  that EA's delay in making payments owed to the IRS hindered or delayed the IRS in collecting or

11  receiving the amounts of those payments, and the "answer" not only fails but refuses to provide

12  that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition

13  question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P.

14  30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the

15  examination still proceeds; the testimony is taken subject to any objection.  A person may instruct

16  a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

17  ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question

18  allegedly calls for an opinion or speculation does not permit the witness not to answer the

19  question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

20  Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

21  a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

22  patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

23  speculation is required – the IRS is being asked a simple question about the actual effect of an

24  occurrence set forth in the documents the IRS provided.[15]  Accordingly, Ms. Galvan must provide

25  ─────────────────────
   webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to
26  cause to be slower or to occur more slowly than normal").

27  [15]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
   and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary
28  meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1 the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

2 **Question 10(b):**

3 [Regarding the return due and taxes owed in connection with the 941 return for the quarter ending

4 March 31, 2015 (USA_AVE0097, USA_AVE0098):]

5 By what date was EA obligated to make the first deposit/tax payment due to the IRS for that

6 quarter? (An approximate date or date range is fine.)

7 **Answer to Question 10(b) from Galvan Declaration:**

8 Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees,

9 depending on the day of the payment, the deposit would be due on the following Wednesday or

10 Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment

11 tax deposit on those payments would be due the following Wednesday. If EA paid its employees

12 on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those

13 payments would be due on the following Friday. Therefore, the first deposit for the quarter would

14 be due three business days after the end of the first semi-weekly payment period in which EA paid

15 its employees.

16 **Trustee's Response Regarding Question 10(b):**

17 The "answer" is non-responsive – the question asks for an initial payment due date (or date range)

18 for the quarter, and the "answer" does not provide a date or date range.  The Federal Rules permit

19 a witness to refuse to answer a deposition question only in very limited circumstances, none of

20 which are present here.  Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . .

21 must be noted on the record, but the examination still proceeds; the testimony is taken subject to

22 any objection.  A person may instruct a deponent not to answer only when necessary to preserve a

23 privilege, to enforce a limitation ordered by the court, or to present a motion under Rule

24 30(d)(3).").  Accordingly, Ms. Galvan must provide the date or date range for which the question

25 asks.

26 _____

27 webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold
back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to

28 cause to be slower or to occur more slowly than normal").

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Question 10(c):**

By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

**Answer to Question 10(c) from Galvan Declaration:**

Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday. If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday. Therefore, the last deposit for the quarter would be due three business days after the end of the final semi-weekly payment period in which EA paid its employees.

**Trustee's Response Regarding Question 10(c):**

The "answer" is non-responsive – the question asks for a final payment due date for the quarter, and the "answer" does not provide a date.  The Federal Rules permit a witness to refuse to answer a deposition question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  Accordingly, Ms. Galvan must provide the date for which the question asks.

**Question 10(d):**

Did EA's failure to file the return between the filing deadline and July 6, 2015, hinder or delay the IRS in collecting or receiving money owed to it?

**Answer to Question 10(d) from Galvan Declaration:**

It would be speculative on the part of the IRS to opine on whether EA's failure to file its return "hindered or delayed" the collection or receipt of the "money owed to it".

**Trustee's Response Regarding Question 10(d):**

The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

24

that EA's substantial delay in filing a quarterly return hindered or delayed the IRS in collecting or receiving amounts due in connection with that quarter, and the "answer" not only fails but refuses to provide that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question allegedly calls for an opinion or speculation does not permit the witness not to answer the question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D. Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or speculation is required – the IRS is being asked a simple question about the actual effect of an occurrence set forth in the documents the IRS provided.[16]  Accordingly, Ms. Galvan must provide the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

**Question 10(e):**

Did EA's failure to make any deposits/tax payments between the first deposit/tax payment due date and January 2017 hinder or delay the IRS in collecting or receiving money owed to it?

**Answer to Question 10(e) from Galvan Declaration:**

It would be speculative on the part of the IRS to opine on whether EA's failure to make payments "hindered or delayed" the collection or receipt of the "money owed to it".

*/ / /*

---

[16]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered" and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to cause to be slower or to occur more slowly than normal").

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1 **Trustee's Response Regarding Question 10(e):**

2 The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

3 that EA's delay in making payments owed to the IRS hindered or delayed the IRS in collecting or

4 receiving the amounts of those payments, and the "answer" not only fails but refuses to provide

5 that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition

6 question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P.

7 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the

8 examination still proceeds; the testimony is taken subject to any objection.  A person may instruct

9 a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

10 ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question

11 allegedly calls for an opinion or speculation does not permit the witness not to answer the

12 question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

13 Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

14 a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

15 patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

16 speculation is required – the IRS is being asked a simple question about the actual effect of an

17 occurrence set forth in the documents the IRS provided.[17]  Accordingly, Ms. Galvan must provide

18 the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

19 **Question 11(b):**

20 [Regarding the return due and taxes owed in connection with the 941 return for the quarter ending

21 June 30, 2015 (USA_AVE0100, USA_AVE0101):]

22 By what date was EA obligated to make the first deposit/tax payment due to the IRS for that

23 quarter? (An approximate date or date range is fine.)

24

---

25 [17]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary

26 meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-
webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold

27 back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to

28 cause to be slower or to occur more slowly than normal").

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   **Answer to Question 11(b) from Galvan Declaration:**

2   Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees,

3   depending on the day of the payment, the deposit would be due on the following Wednesday or

4   Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment

5   tax deposit on those payments would be due the following Wednesday. If EA paid its employees

6   on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those

7   payments would be due on the following Friday. Therefore, the first deposit for the quarter would

8   be due three business days after the end of the first semi-weekly payment period in which EA paid

9   its employees.

10  **Trustee's Response Regarding Question 11(b):**

11  The "answer" is non-responsive – the question asks for an initial payment due date (or date range)

12  for the quarter, and the "answer" does not provide a date or date range.  The Federal Rules permit

13  a witness to refuse to answer a deposition question only in very limited circumstances, none of

14  which are present here.  Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . .

15  must be noted on the record, but the examination still proceeds; the testimony is taken subject to

16  any objection.  A person may instruct a deponent not to answer only when necessary to preserve a

17  privilege, to enforce a limitation ordered by the court, or to present a motion under Rule

18  30(d)(3).").  Accordingly, Ms. Galvan must provide the date or date range for which the question

19  asks.

20  **Question 11(c):**

21  By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

22  **Answer to Question 11(c) from Galvan Declaration:**

23  Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees,

24  depending on the day of the payment, the deposit would be due on the following Wednesday or

25  Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment

26  tax deposit on those payments would be due the following Wednesday. If EA paid its employees

27  on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those

28  payments would be due on the following Friday. Therefore, the last deposit for the quarter would

27

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  be due three business days after the end of the final semi-weekly payment period in which EA

2  paid its employees.

3  **Trustee's Response Regarding Question 11(c):**

4  The "answer" is non-responsive – the question asks for a final payment due date for the quarter,

5  and the "answer" does not provide a date.  The Federal Rules permit a witness to refuse to answer

6  a deposition question only in very limited circumstances, none of which are present here.  Fed. R.

7  Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but

8  the examination still proceeds; the testimony is taken subject to any objection.  A person may

9  instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

10 limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  Accordingly, Ms.

11 Galvan must provide the date for which the question asks.

12 **Question 11(d):**

13 Did EA's failure to file the return between the filing deadline and February 22, 2016, hinder or

14 delay the IRS in collecting or receiving money owed to it?

15 **Answer to Question 11(d) from Galvan Declaration:**

16 It would be speculative on the part of the IRS to opine on whether EA's failure to file its return

17 "hindered or delayed" the collection or receipt of the "money owed to it".

18 **Trustee's Response Regarding Question 11(d):**

19 The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

20 that EA's substantial delay in filing a quarterly return hindered or delayed the IRS in collecting or

21 receiving amounts due in connection with that quarter, and the "answer" not only fails but refuses

22 to provide that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a

23 deposition question only in very limited circumstances, none of which are present here.  Fed. R.

24 Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but

25 the examination still proceeds; the testimony is taken subject to any objection.  A person may

26 instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

27 limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a

28 question allegedly calls for an opinion or speculation does not permit the witness not to answer the

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

2   Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

3   a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

4   patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

5   speculation is required – the IRS is being asked a simple question about the actual effect of an

6   occurrence set forth in the documents the IRS provided.[18]  Accordingly, Ms. Galvan must provide

7   the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

8   **Question 11(e):**

9   Did EA's failure to make any deposits/tax payments between the first deposit/tax payment due

10  date and March 2018 hinder or delay the IRS in collecting or receiving money owed to it?

11  **Answer to Question 11(e) from Galvan Declaration:**

12  It would be speculative on the part of the IRS to opine on whether EA's failure to make payments

13  "hindered or delayed" the collection or receipt of the "money owed to it".

14  **Trustee's Response Regarding Question 11(e):**

15  The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

16  that EA's delay in making payments owed to the IRS hindered or delayed the IRS in collecting or

17  receiving the amounts of those payments, and the "answer" not only fails but refuses to provide

18  that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition

19  question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P.

20  30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the

21  examination still proceeds; the testimony is taken subject to any objection.  A person may instruct

22  a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

23  ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question

24

25  [18]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
    and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary

26  meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-
    webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold

27  back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
    webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to

28  cause to be slower or to occur more slowly than normal").

1    allegedly calls for an opinion or speculation does not permit the witness not to answer the

2    question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

3    Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

4    a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

5    patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

6    speculation is required – the IRS is being asked a simple question about the actual effect of an

7    occurrence set forth in the documents the IRS provided.[19]  Accordingly, Ms. Galvan must provide

8    the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

9    **Question 12(b):**

10    [Regarding the return due and taxes owed in connection with the 941 return for the quarter ending

11    September 30, 2015 (USA_AVE0103, USA_AVE0104):]

12    By what date was EA obligated to make the first deposit/tax payment due to the IRS for that

13    quarter? (An approximate date or date range is fine.)

14    **Answer to Question 12(b) from Galvan Declaration:**

15    Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees,

16    depending on the day of the payment, the deposit would be due on the following Wednesday or

17    Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment

18    tax deposit on those payments would be due the following Wednesday. If EA paid its employees

19    on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those

20    payments would be due on the following Friday. Therefore, the first deposit for the quarter would

21    be due three business days after the end of the first semi-weekly payment period in which EA paid

22    its employees.

23    /  /  /

24

---

25    [19]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered" and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary

26    meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold

27    back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to

28    cause to be slower or to occur more slowly than normal").

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1 **Trustee's Response Regarding Question 12(b):**

2 The "answer" is non-responsive – the question asks for an initial payment due date (or date range)

3 for the quarter, and the "answer" does not provide a date or date range.  The Federal Rules permit

4 a witness to refuse to answer a deposition question only in very limited circumstances, none of

5 which are present here.  Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . .

6 must be noted on the record, but the examination still proceeds; the testimony is taken subject to

7 any objection.  A person may instruct a deponent not to answer only when necessary to preserve a

8 privilege, to enforce a limitation ordered by the court, or to present a motion under Rule

9 30(d)(3).").  Accordingly, Ms. Galvan must provide the date or date range for which the question

10 asks.

11 **Question 12(c):**

12 By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

13 **Answer to Question 12(c) from Galvan Declaration:**

14 Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees,

15 depending on the day of the payment, the deposit would be due on the following Wednesday or

16 Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment

17 tax deposit on those payments would be due the following Wednesday. If EA paid its employees

18 on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those

19 payments would be due on the following Friday. Therefore, the last deposit for the quarter would

20 be due three business days after the end of the final semi-weekly payment period in which EA

21 paid its employees.

22 **Trustee's Response Regarding Question 12(c):**

23 The "answer" is non-responsive – the question asks for a final payment due date for the quarter,

24 and the "answer" does not provide a date.  The Federal Rules permit a witness to refuse to answer

25 a deposition question only in very limited circumstances, none of which are present here.  Fed. R.

26 Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but

27 the examination still proceeds; the testimony is taken subject to any objection.  A person may

28 instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  Accordingly, Ms.

2  Galvan must provide the date for which the question asks.

3  **Question 12(d):**

4  Did EA's failure to file the return between the filing deadline and February 22, 2016, hinder or

5  delay the IRS in collecting or receiving money owed to it?

6  **Answer to Question 12(d) from Galvan Declaration:**

7  It would be speculative on the part of the IRS to opine on whether EA's failure to file its return

8  "hindered or delayed" the collection or receipt of the "money owed to it".

9  **Trustee's Response Regarding Question 12(d):**

10  The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

11  that EA's substantial delay in filing a quarterly return hindered or delayed the IRS in collecting or

12  receiving amounts due in connection with that quarter, and the "answer" not only fails but refuses

13  to provide that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a

14  deposition question only in very limited circumstances, none of which are present here. Fed. R.

15  Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but

16  the examination still proceeds; the testimony is taken subject to any objection.  A person may

17  instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

18  limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a

19  question allegedly calls for an opinion or speculation does not permit the witness not to answer the

20  question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

21  Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

22  a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

23  patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

24  speculation is required – the IRS is being asked a simple question about the actual effect of an

25  occurrence set forth in the documents the IRS provided.[20]  Accordingly, Ms. Galvan must provide

26

27  [20]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary
meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-

28

1    the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

2    **Question 12(e):**

3    Did EA's failure to make any deposits/tax payments between the first deposit/tax payment due

4    date and October 26, 2015 hinder or delay the IRS in collecting or receiving money owed to it?

5    **Answer to Question 12(e) from Galvan Declaration:**

6    It would be speculative on the part of the IRS to opine on whether EA's failure to make payments

7    "hindered or delayed" the collection or receipt of the "money owed to it".

8    **Trustee's Response Regarding Question 12(e):**

9    The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

10    that EA's delay in making payments owed to the IRS hindered or delayed the IRS in collecting or

11    receiving the amounts of those payments, and the "answer" not only fails but refuses to provide

12    that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition

13    question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P.

14    30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the

15    examination still proceeds; the testimony is taken subject to any objection.  A person may instruct

16    a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

17    ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question

18    allegedly calls for an opinion or speculation does not permit the witness not to answer the

19    question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

20    Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

21    a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

22    patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

23    speculation is required – the IRS is being asked a simple question about the actual effect of an

24    occurrence set forth in the documents the IRS provided.[21]  Accordingly, Ms. Galvan must provide

25    ───────────────

26    webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold
back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-

27    webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to
cause to be slower or to occur more slowly than normal").

28    [21]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

2  **Question 12(g):**

3  Has EA's failure to make any payments on the associated penalty hindered or delayed the IRS in

4  collecting or receiving that amount?

5  **Answer to Question 12(g) from Galvan Declaration:**

6  It would be speculative on the part of the IRS to opine on whether EA's failure to make payments

7  "hindered or delayed" the collection or receipt of the "money owed to it".

8  **Trustee's Response Regarding Question 12(g):**

9  The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

10  that EA's failure to pay a penalty owed to the IRS hindered or delayed the IRS in collecting or

11  receiving that penalty, and the "answer" not only fails but refuses to provide that confirmation or

12  denial.  The Federal Rules permit a witness to refuse to answer a deposition question only in very

13  limited circumstances, none of which are present here.  Fed. R. Civ. P. 30(c)(2) ("An objection at

14  the time of the examination . . . must be noted on the record, but the examination still proceeds;

15  the testimony is taken subject to any objection.  A person may instruct a deponent not to answer

16  only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to

17  present a motion under Rule 30(d)(3).").  An objection that a question allegedly calls for an

18  opinion or speculation does not permit the witness not to answer the question.  *See, e.g., McCoy v.*

19  *City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D. Cal. Sep. 26, 2022) ("The only

20  permissible basis for . . . instructions not to answer was to preserve a privilege. . . . [O]bjections

21  [like] . . . calling for improper opinion . . . [or] speculation . . . . are patently improper grounds for

22  instructing a witness not to answer.").  In any event, no opinion or speculation is required – the

23  IRS is being asked a simple question about the actual effect of an occurrence set forth in the

26  and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to cause to be slower or to occur more slowly than normal").

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  documents the IRS provided.[22]  Accordingly, Ms. Galvan must provide the confirmation or denial

2  (essentially, a "yes" or "no") for which the question asks.

3  **Question 13(b):**

4  [Regarding the return due and taxes owed in connection with the 941 return for the quarter ending

5  December 31, 2015 (USA_AVE0105, USA_AVE0106, USA_AVE0107):]

6  By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

7  **Answer to Question 13(b) from Galvan Declaration:**

8  Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees,

9  depending on the day of the payment, the deposit would be due on the following Wednesday or

10 Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment

11 tax deposit on those payments would be due the following Wednesday. If EA paid its employees

12 on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those

13 payments would be due on the following Friday. Therefore, the last deposit for the quarter would

14 be due three business days after the end of the final semi-weekly payment period in which EA

15 paid its employees.

16 **Trustee's Response Regarding Question 13(b):**

17 The "answer" is non-responsive – the question asks for a final payment due date for the quarter,

18 and the "answer" does not provide a date.  The Federal Rules permit a witness to refuse to answer

19 a deposition question only in very limited circumstances, none of which are present here.  Fed. R.

20 Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but

21 the examination still proceeds; the testimony is taken subject to any objection.  A person may

22 instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

23 limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  Accordingly, Ms.

24

25 [22]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
   and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary
26 meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-
   webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold
27 back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
   webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to
28 cause to be slower or to occur more slowly than normal").

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    Galvan must provide the date for which the question asks.

2    **Question 13(c):**

3    Did EA's failure to file the return between the filing deadline and May 8, 2017, hinder or delay the

4    IRS in collecting or receiving money owed to it?

5    **Answer to Question 13(c) from Galvan Declaration:**

6    It would be speculative on the part of the IRS to opine on whether EA's failure to file its return

7    "hindered or delayed" the collection or receipt of the "money owed to it".

8    **Trustee's Response Regarding Question 13(c):**

9    The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

10   that EA's substantial delay in filing a quarterly return hindered or delayed the IRS in collecting or

11   receiving amounts due in connection with that quarter, and the "answer" not only fails but refuses

12   to provide that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a

13   deposition question only in very limited circumstances, none of which are present here.  Fed. R.

14   Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but

15   the examination still proceeds; the testimony is taken subject to any objection.  A person may

16   instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

17   limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a

18   question allegedly calls for an opinion or speculation does not permit the witness not to answer the

19   question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

20   Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

21   a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

22   patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

23   speculation is required – the IRS is being asked a simple question about the actual effect of an

24   occurrence set forth in the documents the IRS provided.[23]  Accordingly, Ms. Galvan must provide

---

25   [23]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
26   and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary
     meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-
27   webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold
     back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
28

1    the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

2    **Question 13(d):**

3    Did EA's failure to pay a substantial portion of the deposits/tax payments for that quarter until

4    March 2018 hinder or delay the IRS in collecting or receiving money owed to it?

5    **Answer to Question 13(d) from Galvan Declaration:**

6    It would be speculative on the part of the IRS to opine on whether EA's failure to make payments

7    "hindered or delayed" the collection or receipt of the "money owed to it".

8    **Trustee's Response Regarding Question 13(d):**

9    The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

10   that EA's delay in making payments owed to the IRS hindered or delayed the IRS in collecting or

11   receiving the amounts of those payments, and the "answer" not only fails but refuses to provide

12   that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition

13   question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P.

14   30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the

15   examination still proceeds; the testimony is taken subject to any objection.  A person may instruct

16   a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

17   ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question

18   allegedly calls for an opinion or speculation does not permit the witness not to answer the

19   question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

20   Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

21   a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

22   patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

23   speculation is required – the IRS is being asked a simple question about the actual effect of an

24   occurrence set forth in the documents the IRS provided.[24]  Accordingly, Ms. Galvan must provide

25

26   webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to cause to be slower or to occur more slowly than normal").

27   [24] While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered" and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-

28

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

2   **Question 13(e):**

3   What is the basis of EA's liability for the "Additional tax assessed" of $447,405.82, with an

4   indicated date of October 16, 2017? (USA_AVE0106) On what date was that liability incurred?

5   How was the amount calculated?

6   **Answer to Question 13(e) from Galvan Declaration:**

7   On information and belief, the "additional tax assessed" of $447,405.82 is based on information

8   provided to the IRS by EA in October of 2017 through the submission of a Form 941, 941X, or

9   similar document. The liability would have been incurred at various times during the Form 941

10   employment tax period ending on December 31, 2015, on the dates which EA paid its employees

11   during that period. The amount of the assessment was calculated by using the information

12   provided by EA to the IRS in October of 2017.

13   **Trustee's Response Regarding Question 13(e):**

14   The "answer" is non-responsive, because it does not actually explain how or why the IRS

15   determined in October 2017 that EA was liable for an additional tax amount for the fourth quarter

16   of 2015, nor the mathematics (or, for that matter, statutory basis) behind the determination that the

17   amount of that liability was $447,405.82 – in fact, literally all the "answer" says is that the

18   assessment and the calculation were "based on information." Ms. Galvan must provide a proper

19   response and factual foundation that, at a minimum, provides answers to the following questions:

20   (1) What was the information that was "provided to the IRS by EA in October of 2017"? (All

21   documents reflecting that information should also be produced to the Trustee.) (2) What is the

22   statutory basis for the additional liability? (3) Why is the amount of the additional liability

23   ($447,405.82) so large in comparison with the amount of taxes that EA originally reported as due

24   for that quarter ($47,228.21, per USA_AVE0105)? Did EA under-report the amount of taxes due

25   on its original return? If so, does the IRS have any reason to believe that under-reporting was

---

27   webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold
back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to
cause to be slower or to occur more slowly than normal").

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    intentional, and, if so, what is that reason or those reasons?  (4)  What is the basis of the

2    "information and belief" on which Ms. Galvan responds to the question?

3    **Question 14(b):**

4    [Regarding the return due and taxes owed in connection with the 941 return for the quarter ending

5    March 31, 2016 (USA_AVE0124, USA_AVE0125):]

6    By what date was EA obligated to make the first deposit/tax payment due to the IRS for that

7    quarter? (An approximate date or date range is fine.)

8    **Answer to Question 14(b) from Galvan Declaration:**

9    Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees,

10   depending on the day of the payment, the deposit would be due on the following Wednesday or

11   Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment

12   tax deposit on those payments would be due the following Wednesday. If EA paid its employees

13   on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those

14   payments would be due on the following Friday. Therefore, the first deposit for the quarter would

15   be due three business days after the end of the first semi-weekly payment period in which EA paid

16   its employees.

17   **Trustee's Response Regarding Question 14(b):**

18   The "answer" is non-responsive – the question asks for an initial payment due date (or date range)

19   for the quarter, and the "answer" does not provide a date or date range.  The Federal Rules permit

20   a witness to refuse to answer a deposition question only in very limited circumstances, none of

21   which are present here.  Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . .

22   must be noted on the record, but the examination still proceeds; the testimony is taken subject to

23   any objection.  A person may instruct a deponent not to answer only when necessary to preserve a

24   privilege, to enforce a limitation ordered by the court, or to present a motion under Rule

25   30(d)(3).").  Accordingly, Ms. Galvan must provide the date or date range for which the question

26   asks.

27   **Question 14(c):**

28   By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

Landau Law LLP
Attorneys at Law
Los Angeles, California

Landau Law LLP
Attorneys At Law
Los Angeles, California

**Answer to Question 14(c) from Galvan Declaration:**

Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday. If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday. Therefore, the last deposit for the quarter would be due three business days after the end of the final semi-weekly payment period in which EA paid its employees.

**Trustee's Response Regarding Question 14(c):**

The "answer" is non-responsive – the question asks for a final payment due date for the quarter, and the "answer" does not provide a date.  The Federal Rules permit a witness to refuse to answer a deposition question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  Accordingly, Ms. Galvan must provide the date for which the question asks.

**Question 14(d):**

Did EA's failure to file the return between the filing deadline and May 8, 2017, hinder or delay the IRS in collecting or receiving money owed to it?

**Answer to Question 14(d) from Galvan Declaration:**

It would be speculative on the part of the IRS to opine on whether EA's failure to file its return "hindered or delayed" the collection or receipt of the "money owed to it".

**Trustee's Response Regarding Question 14(d):**

The "answer" is non-responsive – the question asks for confirmation or denial of the proposition that EA's substantial delay in filing a quarterly return hindered or delayed the IRS in collecting or receiving amounts due in connection with that quarter, and the "answer" not only fails but refuses

40

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1   to provide that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a

2   deposition question only in very limited circumstances, none of which are present here.  Fed. R.

3   Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but

4   the examination still proceeds; the testimony is taken subject to any objection.  A person may

5   instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

6   limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a

7   question allegedly calls for an opinion or speculation does not permit the witness not to answer the

8   question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

9   Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

10  a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

11  patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

12  speculation is required – the IRS is being asked a simple question about the actual effect of an

13  occurrence set forth in the documents the IRS provided.[25]  Accordingly, Ms. Galvan must provide

14  the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

15  **Question 14(e):**

16  Did EA's failure to make any deposits/tax payments between the first deposit/tax payment due

17  date and March 2018 hinder or delay the IRS in collecting or receiving money owed to it?

18  **Answer to Question 14(e) from Galvan Declaration:**

19  It would be speculative on the part of the IRS to opine on whether EA's failure to make payments

20  "hindered or delayed" the collection or receipt of the "money owed to it".

21  **Trustee's Response Regarding Question 14(e):**

22  The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

23  that EA's delay in making payments owed to the IRS hindered or delayed the IRS in collecting or

24

---

25  [25]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
    and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary
26  meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-
    webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold
27  back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
    webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to
28  cause to be slower or to occur more slowly than normal").

receiving the amounts of those payments, and the "answer" not only fails but refuses to provide

that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition

question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P.

30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the

examination still proceeds; the testimony is taken subject to any objection.  A person may instruct

a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question

allegedly calls for an opinion or speculation does not permit the witness not to answer the

question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

speculation is required – the IRS is being asked a simple question about the actual effect of an

occurrence set forth in the documents the IRS provided.[26]  Accordingly, Ms. Galvan must provide

the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

### Question 14(f):

What is the basis of EA's liability for the "Additional tax assessed" of $150,668.51, with an

indicated date of October 16, 2017? (USA_AVE0125) On what date was that liability incurred?

How was the amount calculated?

### Answer to Question 14(f) from Galvan Declaration:

On information and belief, the "additional tax assessed" $150,668.51 is based on information

provided to the IRS by EA in October of 2017 through the submission of a Form 941, 941X, or

similar document. The liability would have been incurred at various times during the Form 941

---

[26]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered" and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to cause to be slower or to occur more slowly than normal").

Landau Law LLP
Attorneys At Law
Los Angeles, California

1  employment tax period ending on March 31, 2016, on the dates which EA paid its employees

2  during that period. The amount of the assessment was calculated by using the information

3  provided by EA to the IRS in October of 2017.

4  **Trustee's Response Regarding Question 14(f):**

5  The "answer" is non-responsive, because it does not actually explain how or why the IRS

6  determined in October 2017 that EA was liable for an additional tax amount for the first quarter of

7  2016, nor the mathematics (or, for that matter, statutory basis) behind the determination that the

8  amount of that liability was $150,668.51 – in fact, literally all the "answer" says is that the

9  assessment and the calculation were "based on information." Ms. Galvan must provide a proper

10  response and factual foundation that, at a minimum, provides answers to the following questions:

11  (1) What was the information that was "provided to the IRS by EA in October of 2017"? (All

12  documents reflecting that information should also be produced to the Trustee.) (2) What is the

13  statutory basis for the additional liability? (3) Why is the amount of the additional liability

14  ($150,668.51) so large in comparison with the amount of taxes that EA originally reported as due

15  for that quarter ($48,408.91, per USA_AVE0124)? Did EA under-report the amount of taxes due

16  on its original return? If so, does the IRS have any reason to believe that under-reporting was

17  intentional, and, if so, what is that reason or those reasons? (4) What is the basis of the

18  "information and belief" on which Ms. Galvan responds to the question?

19  **Question 15(b):**

20  [Regarding the return due and taxes owed in connection with the 941 return for the quarter ending

21  June 30, 2016 (USA_AVE0127, USA_AVE0128):]

22  By what date was EA obligated to make the first deposit/tax payment due to the IRS for that

23  quarter? (An approximate date or date range is fine.)

24  **Answer to Question 15(b) from Galvan Declaration:**

25  Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees,

26  depending on the day of the payment, the deposit would be due on the following Wednesday or

27  Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment

28  tax deposit on those payments would be due the following Wednesday. If EA paid its employees

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Landau Law LLP
Attorneys At Law
Los Angeles, California

1  on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those

2  payments would be due on the following Friday. Therefore, the first deposit for the quarter would

3  be due three business days after the end of the first semi-weekly payment period in which EA paid

4  its employees.

5  **Trustee's Response Regarding Question 15(b):**

6  The "answer" is non-responsive – the question asks for an initial payment due date (or date range)

7  for the quarter, and the "answer" does not provide a date or date range.  The Federal Rules permit

8  a witness to refuse to answer a deposition question only in very limited circumstances, none of

9  which are present here.  Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . .

10  must be noted on the record, but the examination still proceeds; the testimony is taken subject to

11  any objection.  A person may instruct a deponent not to answer only when necessary to preserve a

12  privilege, to enforce a limitation ordered by the court, or to present a motion under Rule

13  30(d)(3).").  Accordingly, Ms. Galvan must provide the date or date range for which the question

14  asks.

15  **Question 15(c):**

16  By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

17  **Answer to Question 15(c) from Galvan Declaration:**

18  Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees,

19  depending on the day of the payment, the deposit would be due on the following Wednesday or

20  Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment

21  tax deposit on those payments would be due the following Wednesday. If EA paid its employees

22  on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those

23  payments would be due on the following Friday. Therefore, the last deposit for the quarter would

24  be due three business days after the end of the final semi-weekly payment period in which EA

25  paid its employees.

26  **Trustee's Response Regarding Question 15(c):**

27  The "answer" is non-responsive – the question asks for a final payment due date for the quarter,

28  and the "answer" does not provide a date.  The Federal Rules permit a witness to refuse to answer

a deposition question only in very limited circumstances, none of which are present here.  Fed. R.
Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but
the examination still proceeds; the testimony is taken subject to any objection.  A person may
instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a
limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  Accordingly, Ms.
Galvan must provide the date for which the question asks.

**Question 15(d)**:

Did EA's failure to file the return between the filing deadline and May 8, 2017, hinder or delay the
IRS in collecting or receiving money owed to it?

**Answer to Question 15(d) from Galvan Declaration**:

It would be speculative on the part of the IRS to opine on whether EA's failure to file its return
"hindered or delayed" the collection or receipt of the "money owed to it".

**Trustee's Response Regarding Question 15(d)**:

The "answer" is non-responsive – the question asks for confirmation or denial of the proposition
that EA's substantial delay in filing a quarterly return hindered or delayed the IRS in collecting or
receiving amounts due in connection with that quarter, and the "answer" not only fails but refuses
to provide that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a
deposition question only in very limited circumstances, none of which are present here.  Fed. R.
Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but
the examination still proceeds; the testimony is taken subject to any objection.  A person may
instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a
limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a
question allegedly calls for an opinion or speculation does not permit the witness not to answer the
question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.
Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve
a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are
patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or
speculation is required – the IRS is being asked a simple question about the actual effect of an

Landau Law LLP
Attorneys At Law
Los Angeles, California

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  occurrence set forth in the documents the IRS provided.[27]  Accordingly, Ms. Galvan must provide

2  the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

3  **Question 15(e):**

4  Did EA's failure to make any deposits/tax payments between the first deposit/tax payment due

5  date and March 2018 hinder or delay the IRS in collecting or receiving money owed to it?

6  **Answer to Question 15(e) from Galvan Declaration:**

7  It would be speculative on the part of the IRS to opine on whether EA's failure to make payments

8  "hindered or delayed" the collection or receipt of the "money owed to it".

9  **Trustee's Response Regarding Question 15(e):**

10  The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

11  that EA's delay in making payments owed to the IRS hindered or delayed the IRS in collecting or

12  receiving the amounts of those payments, and the "answer" not only fails but refuses to provide

13  that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition

14  question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P.

15  30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the

16  examination still proceeds; the testimony is taken subject to any objection.  A person may instruct

17  a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

18  ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question

19  allegedly calls for an opinion or speculation does not permit the witness not to answer the

20  question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

21  Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

22  a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

23  patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

24

25  [27]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary
26  meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-
webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold
27  back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to
28  cause to be slower or to occur more slowly than normal").

1  speculation is required – the IRS is being asked a simple question about the actual effect of an

2  occurrence set forth in the documents the IRS provided.[28]  Accordingly, Ms. Galvan must provide

3  the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

4  **Question 15(f):**

5  What is the basis of EA's liability for the "Additional tax assessed" of $106,405.92, with an

6  indicated date of October 16, 2017? (USA_AVE0128) On what date was that liability incurred?

7  How was the amount calculated?

8  **Answer to Question 15(f) from Galvan Declaration:**

9  On information and belief, the "additional tax assessed" of $106,405.92 is based on information

10  provided to the IRS by EA in October of 2017 through the submission of a Form 941, 941X, or

11  similar document. The liability would have been incurred at various times during the Form 941

12  employment tax period ending on June 30, 2016, on the dates which EA paid its employees during

13  that period. The amount of the assessment was calculated by using the information provided by

14  EA to the IRS in October of 2017.

15  **Trustee's Response Regarding Question 15(f):**

16  The "answer" is non-responsive, because it does not actually explain how or why the IRS

17  determined in October 2017 that EA was liable for an additional tax amount for the second quarter

18  of 2016, nor the mathematics (or, for that matter, statutory basis) behind the determination that the

19  amount of that liability was $106,405.92 – in fact, literally all the "answer" says is that the

20  assessment and the calculation were "based on information."  Ms. Galvan must provide a proper

21  response and factual foundation that, at a minimum, provides answers to the following questions:

22  (1) What was the information that was "provided to the IRS by EA in October of 2017"?  (All

23  documents reflecting that information should also be produced to the Trustee.)  (2)  What is the

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

---

[28]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered" and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to cause to be slower or to occur more slowly than normal").

Landau Law LLP
Attorneys At Law
Los Angeles, California

1  statutory basis for the additional liability?  (3)  Why is the amount of the additional liability

2  ($106,405.92) so large in comparison with the amount of taxes that EA originally reported as due

3  for that quarter ($49,619.14, per USA_AVE0127)?  Did EA under-report the amount of taxes due

4  on its original return?  If so, does the IRS have any reason to believe that under-reporting was

5  intentional, and, if so, what is that reason or those reasons?  (4)  What is the basis of the

6  "information and belief" on which Ms. Galvan responds to the question?

7  **Question 16(b):**

8  [Regarding the return due and taxes owed in connection with the 941 return for the quarter ending

9  September 30, 2016 (USA_AVE0130, USA_AVE0131):]

10  By what date was EA obligated to make the first deposit/tax payment due to the IRS for that

11  quarter? (An approximate date or date range is fine.)

12  **Answer to Question 16(b) from Galvan Declaration:**

13  Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees,

14  depending on the day of the payment, the deposit would be due on the following Wednesday or

15  Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment

16  tax deposit on those payments would be due the following Wednesday. If EA paid its employees

17  on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those

18  payments would be due on the following Friday. Therefore, the first deposit for the quarter would

19  be due three business days after the end of the first semi-weekly payment period in which EA paid

20  its employees.

21  **Trustee's Response Regarding Question 16(b):**

22  The "answer" is non-responsive – the question asks for an initial payment due date (or date range)

23  for the quarter, and the "answer" does not provide a date or date range.  The Federal Rules permit

24  a witness to refuse to answer a deposition question only in very limited circumstances, none of

25  which are present here.  Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . .

26  must be noted on the record, but the examination still proceeds; the testimony is taken subject to

27  any objection.  A person may instruct a deponent not to answer only when necessary to preserve a

28  privilege, to enforce a limitation ordered by the court, or to present a motion under Rule

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  30(d)(3).")).  Accordingly, Ms. Galvan must provide the date or date range for which the question

2  asks.

3  **Question 16(c):**

4  By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

5  **Answer to Question 16(c) from Galvan Declaration:**

6  Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees,

7  depending on the day of the payment, the deposit would be due on the following Wednesday or

8  Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment

9  tax deposit on those payments would be due the following Wednesday. If EA paid its employees

10  on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those

11  payments would be due on the following Friday. Therefore, the last deposit for the quarter would

12  be due three business days after the end of the final semi-weekly payment period in which EA

13  paid its employees.

14  **Trustee's Response Regarding Question 16(c):**

15  The "answer" is non-responsive – the question asks for a final payment due date for the quarter,

16  and the "answer" does not provide a date.  The Federal Rules permit a witness to refuse to answer

17  a deposition question only in very limited circumstances, none of which are present here.  Fed. R.

18  Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but

19  the examination still proceeds; the testimony is taken subject to any objection.  A person may

20  instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

21  limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  Accordingly, Ms.

22  Galvan must provide the date for which the question asks.

23  **Question 16(d):**

24  Did EA's failure to file the return between the filing deadline and May 8, 2017, hinder or delay the

25  IRS in collecting or receiving money owed to it?

26  **Answer to Question 16(d) from Galvan Declaration:**

27  It would be speculative on the part of the IRS to opine on whether EA's failure to file its return

28  "hindered or delayed" the collection or receipt of the "money owed to it".

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    **Trustee's Response Regarding Question 16(d):**

2    The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

3    that EA's substantial delay in filing a quarterly return hindered or delayed the IRS in collecting or

4    receiving amounts due in connection with that quarter, and the "answer" not only fails but refuses

5    to provide that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a

6    deposition question only in very limited circumstances, none of which are present here.  Fed. R.

7    Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but

8    the examination still proceeds; the testimony is taken subject to any objection.  A person may

9    instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

10   limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a

11   question allegedly calls for an opinion or speculation does not permit the witness not to answer the

12   question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

13   Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

14   a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

15   patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

16   speculation is required – the IRS is being asked a simple question about the actual effect of an

17   occurrence set forth in the documents the IRS provided.[29]  Accordingly, Ms. Galvan must provide

18   the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

19   **Question 16(e):**

20   Did EA's failure to make any deposits/tax payments between the first deposit/tax payment due

21   date and March 2018 hinder or delay the IRS in collecting or receiving money owed to it?

22   **Answer to Question 16(e) from Galvan Declaration:**

23   It would be speculative on the part of the IRS to opine on whether EA's failure to make payments

24

---

25   [29]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary

26   meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-
webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold

27   back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to

28   cause to be slower or to occur more slowly than normal").

1    "hindered or delayed" the collection or receipt of the "money owed to it".

2    **Trustee's Response Regarding Question 16(e):**

3    The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

4    that EA's delay in making payments owed to the IRS hindered or delayed the IRS in collecting or

5    receiving the amounts of those payments, and the "answer" not only fails but refuses to provide

6    that confirmation or denial. The Federal Rules permit a witness to refuse to answer a deposition

7    question only in very limited circumstances, none of which are present here. Fed. R. Civ. P.

8    30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the

9    examination still proceeds; the testimony is taken subject to any objection. A person may instruct

10   a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

11   ordered by the court, or to present a motion under Rule 30(d)(3)."). An objection that a question

12   allegedly calls for an opinion or speculation does not permit the witness not to answer the

13   question. *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

14   Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

15   a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

16   patently improper grounds for instructing a witness not to answer."). In any event, no opinion or

17   speculation is required – the IRS is being asked a simple question about the actual effect of an

18   occurrence set forth in the documents the IRS provided.[30] Accordingly, Ms. Galvan must provide

19   the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

20   **Question 16(f):**

21   What is the basis of EA's liability for the "Additional tax assessed" of $64,373.31, with an

22   indicated date of October 16, 2017? (USA_AVE0131) On what date was that liability incurred?

23   How was the amount calculated?

24

---

25   [30] While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
     and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary
26   meanings, which are all the IRS needs to answer the question. *See* https://www.merriam-
     webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold
27   back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
     webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to
28   cause to be slower or to occur more slowly than normal").

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1

**Answer to Question 16(f) from Galvan Declaration:**

2  On information and belief, the "additional tax assessed" of $64,373.31 is based on information

3  provided to the IRS by EA in October of 2017 through the submission of a Form 941, 941X, or

4  similar document. The liability would have been incurred at various times during the Form 941

5  employment tax period ending on September 30, 2016, on the dates which EA paid its employees

6  during that period. The amount of the assessment was calculated by using the information

7  provided by EA to the IRS in October of 2017.

8  **Trustee's Response Regarding Question 16(f):**

9  The "answer" is non-responsive, because it does not actually explain how or why the IRS

10  determined in October 2017 that EA was liable for an additional tax amount for the third quarter

11  of 2016, nor the mathematics (or, for that matter, statutory basis) behind the determination that the

12  amount of that liability was $64,373.31 – in fact, literally all the "answer" says is that the

13  assessment and the calculation were "based on information."  Ms. Galvan must provide a proper

14  response and factual foundation that, at a minimum, provides answers to the following questions:

15  (1) What was the information that was "provided to the IRS by EA in October of 2017"?  (All

16  documents reflecting that information should also be produced to the Trustee.)  (2)  What is the

17  statutory basis for the additional liability?  (3)  Why is the amount of the additional liability

18  ($64,373.31) so large in comparison with the amount of taxes that EA originally reported as due

19  for that quarter ($50,859.63, per USA_AVE0130)?  Did EA under-report the amount of taxes due

20  on its original return?  If so, does the IRS have any reason to believe that under-reporting was

21  intentional, and, if so, what is that reason or those reasons?  (4)  What is the basis of the

22  "information and belief" on which Ms. Galvan responds to the question?

23  **Question 17(b):**

24  [Regarding the return due and taxes owed in connection with the 941 return for the quarter ending

25  December 31, 2016 (USA_AVE0133, USA_AVE0134):]

26  By what date was EA obligated to make the first deposit/tax payment due to the IRS for that

27  quarter? (An approximate date or date range is fine.)

28  / / /

Landau Law LLP
Attorneys At Law
Los Angeles, California

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Answer to Question 17(b) from Galvan Declaration:**

Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday. If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday. Therefore, the first deposit for the quarter would be due three business days after the end of the first semi-weekly payment period in which EA paid its employees.

**Trustee's Response Regarding Question 17(b):**

The "answer" is non-responsive – the question asks for an initial payment due date (or date range) for the quarter, and the "answer" does not provide a date or date range.  The Federal Rules permit a witness to refuse to answer a deposition question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection.  A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  Accordingly, Ms. Galvan must provide the date or date range for which the question asks.

**Question 17(c):**

By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

**Answer to Question 17(c) from Galvan Declaration:**

Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday. If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday. Therefore, the last deposit for the quarter would

Landau Law LLP
Attorneys At Law
Los Angeles, California

1    be due three business days after the end of the final semi-weekly payment period in which EA

2    paid its employees.

3    **Trustee's Response Regarding Question 17(c):**

4    The "answer" is non-responsive – the question asks for a final payment due date for the quarter,

5    and the "answer" does not provide a date.  The Federal Rules permit a witness to refuse to answer

6    a deposition question only in very limited circumstances, none of which are present here.  Fed. R.

7    Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but

8    the examination still proceeds; the testimony is taken subject to any objection.  A person may

9    instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

10   limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  Accordingly, Ms.

11   Galvan must provide the date for which the question asks.

12   **Question 17(d):**

13   Did EA's failure to file the return between the filing deadline and May 8, 2017, hinder or delay the

14   IRS in collecting or receiving money owed to it?

15   **Answer to Question 17(d) from Galvan Declaration:**

16   It would be speculative on the part of the IRS to opine on whether EA's failure to file its return

17   "hindered or delayed" the collection or receipt of the "money owed to it".

18   **Trustee's Response Regarding Question 17(d):**

19   The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

20   that EA's substantial delay in filing a quarterly return hindered or delayed the IRS in collecting or

21   receiving amounts due in connection with that quarter, and the "answer" not only fails but refuses

22   to provide that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a

23   deposition question only in very limited circumstances, none of which are present here.  Fed. R.

24   Civ. P. 30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but

25   the examination still proceeds; the testimony is taken subject to any objection.  A person may

26   instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a

27   limitation ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a

28   question allegedly calls for an opinion or speculation does not permit the witness not to answer the

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

2    Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

3    a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

4    patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

5    speculation is required – the IRS is being asked a simple question about the actual effect of an

6    occurrence set forth in the documents the IRS provided.[31]  Accordingly, Ms. Galvan must provide

7    the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

8    **Question 17(e):**

9    Did EA's failure to make any deposits/tax payments between the first deposit/tax payment due

10   date and March 2018 hinder or delay the IRS in collecting or receiving money owed to it?

11   **Answer to Question 17(e) from Galvan Declaration:**

12   It would be speculative on the part of the IRS to opine on whether EA's failure to make payments

13   "hindered or delayed" the collection or receipt of the "money owed to it".

14   **Trustee's Response Regarding Question 17(e):**

15   The "answer" is non-responsive – the question asks for confirmation or denial of the proposition

16   that EA's delay in making payments owed to the IRS hindered or delayed the IRS in collecting or

17   receiving the amounts of those payments, and the "answer" not only fails but refuses to provide

18   that confirmation or denial.  The Federal Rules permit a witness to refuse to answer a deposition

19   question only in very limited circumstances, none of which are present here.  Fed. R. Civ. P.

20   30(c)(2) ("An objection at the time of the examination . . . must be noted on the record, but the

21   examination still proceeds; the testimony is taken subject to any objection.  A person may instruct

22   a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation

23   ordered by the court, or to present a motion under Rule 30(d)(3).").  An objection that a question

24

25   [31]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered"
     and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary

26   meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-
     webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold

27   back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-
     webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to

28   cause to be slower or to occur more slowly than normal").

1    allegedly calls for an opinion or speculation does not permit the witness not to answer the

2    question.  *See, e.g., McCoy v. City of Vallejo*, 2022 U.S. Dist. LEXIS 175391, at *10-*11 (E.D.

3    Cal. Sep. 26, 2022) ("The only permissible basis for . . . instructions not to answer was to preserve

4    a privilege. . . . [O]bjections [like] . . . calling for improper opinion . . . [or] speculation . . . . are

5    patently improper grounds for instructing a witness not to answer.").  In any event, no opinion or

6    speculation is required – the IRS is being asked a simple question about the actual effect of an

7    occurrence set forth in the documents the IRS provided.[32]  Accordingly, Ms. Galvan must provide

8    the confirmation or denial (essentially, a "yes" or "no") for which the question asks.

9    **Question 17(f):**

10   What is the basis of EA's liability for the "Additional tax assessed" of $114,830.69, with an

11   indicated date of October 16, 2017? (USA_AVE0134) On what date was that liability incurred?

12   How was the amount calculated?

13   **Answer to Question 17(f) from Galvan Declaration:**

14   On information and belief, the "additional tax assessed" of $114,830.69 is based on information

15   provided to the IRS by EA in October of 2017 through the submission of a Form 941, 941X, or

16   similar document. The liability would have been incurred at various times during the Form 941

17   employment tax period ending on September 30, 2016 [*sic*], on the dates which EA paid its

18   employees during that period. The amount of the assessment was calculated by using the

19   information provided by EA to the IRS in October of 2017.

20   **Trustee's Response Regarding Question 17(f):**

21   The "answer" is non-responsive, because it does not actually explain how or why the IRS

22   determined in October 2017 that EA was liable for an additional tax amount for the fourth quarter

23   of 2016, nor the mathematics (or, for that matter, statutory basis) behind the determination that the

24

---

25   [32]  While the IRS apparently desires to convey that it is incapable of comprehending the terms "hindered" and "delayed" (by placing them in quotes in its answer), those words have clear and simple dictionary

26   meanings, which are all the IRS needs to answer the question.  *See* https://www.merriam-webster.com/dictionary/hinder ("hinder" means "to make slow or difficult the progress of: hamper; to hold

27   back: prevent, check; to delay, impede, or prevent action"); https://www.merriam-webster.com/dictionary/delay ("delay" means "to put off, postpone; to stop, detain, or hinder for a time; to

28   cause to be slower or to occur more slowly than normal").

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

amount of that liability was $114,830.69 – in fact, literally all the "answer" says is that the

assessment and the calculation were "based on information."  Ms. Galvan must provide a proper

response and factual foundation that, at a minimum, provides answers to the following questions:

(1) What was the information that was "provided to the IRS by EA in October of 2017"?  (All

documents reflecting that information should also be produced to the Trustee.)  (2)  What is the

statutory basis for the additional liability?  (3)  Why is the amount of the additional liability

($114,830.69) so large in comparison with the amount of taxes that EA originally reported as due

for that quarter ($52,131.11, per USA_AVE0133)?  Did EA under-report the amount of taxes due

on its original return?  If so, does the IRS have any reason to believe that under-reporting was

intentional, and, if so, what is that reason or those reasons?  (4)  What is the basis of the

"information and belief" on which Ms. Galvan responds to the question?

Dated: May 23, 2023                          LANDAU LAW LLP

                                             By:    /s/ John P. Reitman
                                                    John P. Reitman
                                             Special Litigation Attorneys for
                                             Plaintiff Richard A. Marshack,
                                             Chapter 7 Trustee for Eagan Avenatti, LLP

LANDAU LAW LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

EXHIBIT L

1   E. MARTIN ESTRADA
    United States Attorney
2   THOMAS D. COKER
    Assistant United States Attorney
3   Chief, Tax Division
    NAJAH J. SHARIFF (Cal. Bar No. 201216)
4   Assistant United States Attorney
        Federal Building, Suite 7211
5       300 North Los Angeles Street
        Los Angeles, California 90012
6       Telephone: (213) 894-2534
        Facsimile:  (213) 894-0115
7       E-mail: najah.shariff@usdoj.gov

8   Attorneys for the United States of America

9

10              UNITED STATES BANKRUPTCY COURT

11          FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                   SANTA ANA DIVISION

13

14  In re                                  Case No. 8:19-bk-13560-SC

15  EAGAN AVENATTI, LLP                     Chapter 7

16              Debtor.                     Adv. No. 8:20-ap-01150-SC

17
                                            DECLARATION OF RITA GALVA
18  RICHARD A. MARSHACK, CHAPTER 7
    TRUSTEE FOR EAGAN AVENATTI, LLP
19
                Plaintiff,
20
    v.
21
    HONDA AIRCRAFT COMPANY, LLC, a
22  Delaware limited liability company,

23              Defendant.

24

25

26

27

28

                              1

EXHIBIT L
58

DECLARATION OF RITA GALVA

I, Rita Galvan, declare:

1.    I am employed as a Bankruptcy Specialist for the Internal Revenue Service (hereinafter "IRS").  In that capacity, I am familiar with the bankruptcy case involving Eagan Avenatti, LLC, Case No. 8:19-bk-13560-SC, and the related adversary matter involving Gallo Builders, Inc., Case No. 8:20-ap-01060-SC.

2.    On April 21, 2023, attorneys for the plaintiff in the above captioned adversary matter requested that IRS answer certain questions numbered 1 to 26, many containing various subparts.

3.    In this declaration I will be responding to the first 17 of these questions, including the various subparts.

Question 1:  With regard to the late filing penalty of $4,680 listed on USA_AVE0002.
Question 1(a):  It appears that penalty would have been incurred in increments of $390 per month on the 16th of each month from March 16, 2012, through February 16, 2013.  Is that correct?  If not, when was each portion of the penalty incurred?

4.    Answer to Question 1(a):  The penalty accrues pursuant to statute.
26 U.S.C 6698(a) states that for each month, or fraction thereof, in which a partnership fails to file a return of partnership income, as defined by 26 USC 6031, a penalty shall accrue, not to exceed 12 months.  The amount of the penalty which accrues each month is $195 multiplied by the number of persons who were partners in the partnership during any part of the taxable year.

Question 1(b): It appears that a portion of that penalty remains unpaid through today.  Is that correct?

5.    Answer to Question 1(b):  According to the EA account transcript for Form 1065 for the 2011 tax year, as of May 3, 2023, a portion of that penalty remains unpaid.

Question 1(c): Did EA's failure to file its 2011 1065 return between February 2013 and March 2014 (USA_AVE0025, USA_AVE0031) or June 2015 (USA_AVE0002) hinder or delay the IRS in collecting or receiving that penalty?

6.    Answer to Question 1(c): This question is not answerable as constituted.
EA's failure to timely file its 2011 Form 1065 return is the basis for the assessment of the penalty.

Question 1(d): Did EA's failure to make any payment on the penalty between April 2012 and September 2017 hinder or delay the IRS in collecting or receiving that penalty?

7.    Answer to Question 1(d): It would be speculative on the part of the IRS to opine on whether EA's failure to make payments "hindered or delayed" the collection or receipt of the penalty amount.

2

EXHIBIT L
59

Question 2:  With regard to the late filing penalty of $7,020 listed on USA_AVE0007:

Question 2(a):  It appears that penalty would have been incurred in increments of $585 per month on the 16th of each month from March 16, 2013, through February 16, 2014.  Is that correct?  If not, when was each portion of the penalty incurred?

8.      Answer to Question 2(a):  The penalty accrues pursuant to statute 26 U.S.C 6698(a) states that for each month, or fraction thereof, in which a partnership fails to file a return of partnership income, as defined by 26 USC 6031, a penalty shall accrue, not to exceed 12 months.  The amount of the penalty which accrues each month is $195 multiplied by the number of persons who were partners in the partnership during any part of the taxable year.

Question 2(b):  Did EA's failure to file its 2012 1065 return between February 2014 and October 2014 hinder or delay the IRS in collecting or receiving that penalty?

9.      Answer to Question 2(b): This question is not answerable as constituted.  EA's failure to timely file its 2012 Form 1065 return is the basis for the assessment of the penalty.

Question 2(c): Did EA's failure to make any payment on the penalty between April 2013 and September 2017 hinder or delay the IRS in collecting or receiving that penalty?

10.     Answer to Question 2(c): It would be speculative on the part of the IRS to opine on whether EA's failure to make payments "hindered or delayed" the collection or receipt of the penalty amount.

Question 3: Why did the IRS impose a "tax deposit penalty" of $521.66 on EA on May 13, 2013? (USA_AVE0081)  (*I.e.*, what is the basis of EA's liability for that penalty, and how was the amount calculated?)

11.     Answer to Question 3: A federal tax deposit penalty was assessed against EA because not all of the semi-weekly deposits were timely made.  The assessment is made pursuant to 26 USC 6656.

Question 4: Why did the IRS impose a "tax deposit penalty" of $2,371.64 on EA on August 19, 2013? (USA_AVE0083)  (*I.e.*, what is the basis of EA's liability for that penalty, and how was the amount calculated?)

12.     Answer to Question 4: A federal tax deposit penalty was assessed against EA because not all of the semi-weekly deposits were timely made.  The assessment is made pursuant to 26 USC 6656.

3

EXHIBIT L
60

Question 5: Regarding the return due and taxes owed in connection with the 941 return for the quarter ending September 30, 2013 (USA_AVE0084, USA_AVE0085):

Question 5(a): What was the filing deadline for the return?

13.     Answer to Question 5(a): October 31, 2013.

Question 5(b): By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

14.     Answer to Question 5(b): Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday. If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday. If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday. Therefore, the last deposit for the quarter would be due three business days after the end of the final semi-weekly payment period in which EA paid its employees.

Question 5(c): Did EA's failure to file the return between the filing deadline and June 23, 2014, hinder or delay the IRS in collecting or receiving money owed to it?

15.     Answer to Question 5(c): It would be speculative on the part of the IRS to opine on whether EA's failure to file its return "hindered or delayed" the collection or receipt of the "money owed to it".

Question 5(d): Did EA's failure to make the final deposit/tax payment until December 5, 2013, hinder or delay the IRS in collecting or receiving money owed to it?

16.     Answer to Question 5(d): It would be speculative on the part of the IRS to opine on whether EA's failure to make payments "hindered or delayed" the collection or receipt of the "money owed to it".

Question 5(e): Did EA's failure to make any voluntary payment on the associated penalties and interest hinder or delay the IRS in collecting or receiving those amounts?

17.     Answer to Question 5(e): It would be speculative on the part of the IRS to opine on whether EA's failure to make payments "hindered or delayed" the collection or receipt of the penalty or interest amounts.

4

EXHIBIT L
61

Question 6: Regarding the taxes owed in connection with the 941 return for the quarter ending December 31, 2013 (USA_AVE0086, USA_AVE0087):
Question 6(a): By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

18.    Answer to Question 6(a): Deposits were due on a semi-weekly basis.  This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday.  Therefore, the last deposit for the quarter would be due three business days after the end of the final semi-weekly payment period in which EA paid its employees.

Question 6(b): Did EA's failure to make the majority of the deposits/tax payments until March 31, 2014, and April 16, 2014, hinder or delay the IRS in collecting or receiving money owed to it?

19.    Answer to Question 6(b): It would be speculative on the part of the IRS to opine on whether EA's failure to make payments "hindered or delayed" the collection or receipt of the "money owed to it".

Question 7: Regarding the taxes owed in connection with the 941 return for the quarter ending March 31, 2014 (USA_AVE0088, USA_AVE0089):
Question 7(a): By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

20.    Answer to Question 7(a): Deposits were due on a semi-weekly basis.  This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday.  Therefore, the last deposit for the quarter would be due three business days after the end of the final semi-weekly payment period in which EA paid its employees.

Question 7(b):  Did EA's failure to make any deposit/tax payment until May 28, 2014, hinder or delay the IRS in collecting or receiving money owed to it?

21.    Answer to Question 7(b): It would be speculative on the part of the IRS to opine on

5

EXHIBIT L
62

1  whether EA's failure to make payments "hindered or delayed" the collection or receipt of the "money

2  owed to it.".

3  Question 7(c): Did EA's failure to make any voluntary payment on the associated penalties and interest
   hinder or delay the IRS in collecting or receiving those amounts?

4

5      22.    Answer to Question 7(c): It would be speculative on the part of the IRS to opine on

6  whether EA's failure to make payments "hindered or delayed" the collection or receipt of the penalty or

7  interest amounts.

8  Question 8: Regarding the taxes owed in connection with the 941 return for the quarter ending June 30,
   2014 (USA_AVE0090, USA_AVE0091):

9  Question 8(a): (a)  By what date was EA obligated to make all deposits/tax payments due to the IRS for
   that quarter?

10

11     23.    Answer to Question 8(a): Deposits were due on a semi-weekly basis.  This

12 means that whenever EA paid its employees, depending on the day of the payment, the deposit would

13 be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday,

14 and/or Friday, the federal employment tax deposit on those payments would be due the following

15 Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal

16 employment tax deposit on those payments would be due on the following Friday.  Therefore, the last

17 deposit for the quarter would be due three business days after the end of the final semi-weekly payment

18 period in which EA paid its employees.

   Question 8(b): Did EA's failure to make the final deposit/tax payment until July 7, 2014, hinder or
   delay the IRS in collecting or receiving money owed to it?

19

20     24.    Answer to Question 8(b): It would be speculative on the part of the IRS to opine on

21 whether EA's failure to make payments "hindered or delayed" the collection or receipt of the "money

22 owed to it".

23 Question 8(c): Did EA's failure to make any voluntary payment on the associated penalties and interest
   hinder or delay the IRS in collecting or receiving those amounts?

24

25     25.    Answer to Question 8(c): It would be speculative on the part of the IRS to opine on

26 whether EA's failure to make payments "hindered or delayed" the collection or receipt of the penalty or

27 interest amounts.

   Question 9: Regarding the return due and taxes owed in connection with the 941 return for the quarter
   ending December 31, 2014 (USA_AVE0094, USA_AVE0095):

28 Question 9(a): What was the filing deadline for the return?

    26.    Answer to Question 9(a): January 31, 2015.

6

EXHIBIT L
63

1
2

<u>Question 9(b): By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?</u>

3

27.    Answer to Question 9(b): Deposits were due on a semi-weekly basis.  This

4

means that whenever EA paid its employees, depending on the day of the payment, the deposit would

5

be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday,

6

and/or Friday, the federal employment tax deposit on those payments would be due the following

7

Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal

8

employment tax deposit on those payments would be due on the following Friday.  Therefore, the last

9

deposit for the quarter would be due three business days after the end of the final semi-weekly payment

period in which EA paid its employees.

10

<u>Question 9(c): Did EA's failure to file the return between the filing deadline and May 18, 2015, hinder or delay the IRS in collecting or receiving money owed to it?</u>

11
12

28.    Answer to Question 9(c): It would be speculative on the part of the IRS

13

to opine on whether EA's failure to file its return "hindered or delayed" the collection or receipt of the

14

"money owed to it".

15

<u>Question 9(d): Did EA's failure to make the final deposit/tax payment until August or September 2017, hinder or delay the IRS in collecting or receiving money owed to it?</u>

16
17

29.    Answer to Question 9(d): It would be speculative on the part of the IRS to opine on

18

whether EA's failure to make payments "hindered or delayed" the collection or receipt of the "money

owed to it".

19

<u>Question 9(e): Did EA's failure to pay the associated penalties and interest until August or September 2017 hinder or delay the IRS in collecting or receiving those amounts?</u>

20
21

30.    Answer to Question 9(e): It would be speculative on the part of the IRS to opine on

22

whether EA's failure to pay the associated penalties and interest "hindered or delayed" the collection or

23

receipt of those amounts.

24

<u>Question 10: Regarding the return due and taxes owed in connection with the 941 return for the quarter ending March 31, 2015 (USA_AVE0097, USA_AVE0098):</u>

25

<u>Question 10(a): What was the filing deadline for the return?</u>

26
27

31.    Answer to Question 10(a):  April 30, 2015.

<u>Question 10(b): By what date was EA obligated to make the first deposit/tax payment due to the IRS for that quarter?  (An approximate date or date range is fine.)</u>

28

32.    Answer to Question 10(b): Deposits were due on a semi-weekly basis.  This

7

EXHIBIT L
64

means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday.  Therefore, the first deposit for the quarter would be due three business days after the end of the first semi-weekly payment period in which EA paid its employees.

Question 10(c): By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

33.    Answer to Question 10(c): Deposits were due on a semi-weekly basis.  This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday.  Therefore, the last deposit for the quarter would be due three business days after the end of the final semi-weekly payment period in which EA paid its employees.

Question 10(d):  Did EA's failure to file the return between the filing deadline and July 6, 2015, hinder or delay the IRS in collecting or receiving money owed to it?

34.    Answer to Question 10(d): It would be speculative on the part of the IRS to opine on whether EA's failure to file its return "hindered or delayed" the collection or receipt of the "money owed to it".

Question 10(e): Did EA's failure to make any deposits/tax payments between the first deposit/tax payment due date and January 2017 hinder or delay the IRS in collecting or receiving money owed to it?

35.    Answer to Question 10(e): It would be speculative on the part of the IRS to opine on whether EA's failure to make payments "hindered or delayed" the collection or receipt of the "money owed to it".

Question 10(f): Were the taxes for this quarter ever paid in full, and, if so, on what date was the tax indebtedness extinguished?

36. Answer to Question 10(f):  This question calls for a legal conclusion by referencing the terms of art "paid in full" and "indebtedness extinguished".  Furthermore, the term "ever" is vague and ambiguous.   Without waiving these objections, the answer is "No."

8

EXHIBIT L
65

Question 11: Regarding the return due and taxes owed in connection with the 941 return for the quarter ending June 30, 2015 (USA_AVE0100, USA_AVE0101):

Question 11(a): What was the filing deadline for the return?

37.    Answer Question 11(a): July 31, 2015.

Question 11(b): By what date was EA obligated to make the first deposit/tax payment due to the IRS for that quarter?  (An approximate date or date range is fine.)

38.    Answer Question 11(b): Deposits were due on a semi-weekly basis.  This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday.  Therefore, the first deposit for the quarter would be due three business days after the end of the first semi-weekly payment period in which EA paid its employees.

Question 11(c): By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

39.    Answer to Question 11(c): Deposits were due on a semi-weekly basis.  This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday.  Therefore, the last deposit for the quarter would be due three business days after the end of the final semi-weekly payment period in which EA paid its employees.

Question 11(d): Did EA's failure to file the return between the filing deadline and February 22, 2016, hinder or delay the IRS in collecting or receiving money owed to it?

40.    Answer to Question 11(d): It would be speculative on the part of the IRS to opine on whether EA's failure to file its return "hindered or delayed" the collection or receipt of the "money owed to it".

Question 11(e): Did EA's failure to make any deposits/tax payments between the first deposit/tax payment due date and March 2018 hinder or delay the IRS in collecting or receiving money owed to it?

41.    Answer to Question 11(e): It would be speculative on the part of the IRS to opine on

9

EXHIBIT L
66

whether EA's failure to make payments "hindered or delayed" the collection or receipt of the "money owed to it".

Question 11(f): Were the taxes for this quarter ever paid in full, and, if so, on what date was the tax indebtedness extinguished?

42.     Answer to Question 11(f):  This question calls for a legal conclusion by referencing the terms of art "paid in full" and "indebtedness extinguished".  Furthermore, the term "ever" is vague and ambiguous.   Without waiving these objections, the answer is "No."

Question 12: Regarding the return due and taxes owed in connection with the 941 return for the quarter ending September 30, 2015 (USA_AVE0103, USA_AVE0104):
Question 12(a): What was the filing deadline for the return?

43.     Answer to Question 12(a): October 31, 2015.

Question 12(b): By what date was EA obligated to make the first deposit/tax payment due to the IRS for that quarter?  (An approximate date or date range is fine.)

44.     Answer to Question 12(b): Deposits were due on a semi-weekly basis.  This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday.  Therefore, the first deposit for the quarter would be due three business days after the end of the first semi-weekly payment period in which EA paid its employees.

Question 12(c): By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

45.     Answer to Question 12(c): Deposits were due on a semi-weekly basis.  This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday.  Therefore, the last deposit for the quarter would be due three business days after the end of the final semi-weekly payment period in which EA paid its employees.

Question 12(d): Did EA's failure to file the return between the filing deadline and February 22, 2016, hinder or delay the IRS in collecting or receiving money owed to it?

10

EXHIBIT L
67

46.     Answer to Question 12(d): It would be speculative on the part of the

IRS to opine on whether EA's failure to file its return "hindered or delayed" the collection or receipt of

the "money owed to it".

Question 12(e): Did EA's failure to make any deposits/tax payments between the first deposit/tax payment due date and October 26, 2015 hinder or delay the IRS in collecting or receiving money owed to it?

47.     Answer to Question 12(e): It would be speculative on the part of the

IRS to opine on whether EA's failure to make payments "hindered or delayed" the collection or receipt

of the "money owed to it".

Question 12(f): Why did the IRS impose a "tax deposit penalty" of $13,488.61 on EA on October 26, 2015?  (*I.e.*, what is the basis of EA's liability for that penalty, and how was the amount calculated?)

48.     Answer to Question 12(f): A federal tax deposit penalty was assessed

against EA because not all of the semi-weekly deposits were timely made.  The assessment is made

pursuant to 26 U.S.C. 6656.

Question 12(g): Has EA's failure to make any payments on the associated penalty hindered or delayed the IRS in collecting or receiving that amount?

49.     Answer to Question 12(g): It would be speculative on the part of the

IRS to opine on whether EA's failure to make payments "hindered or delayed" the collection or receipt

of the "money owed to it".

Question 13: Regarding the return due and taxes owed in connection with the 941 return for the quarter ending December 31, 2015 (USA_AVE0105, USA_AVE0106, USA_AVE107):
Question 13(a): What was the filing deadline for the return?

50.     Answer to Question 13(a): January 31, 2016.

Question 13(b): By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

51.     Answer to Question 13(b): Deposits were due on a semi-weekly basis.  This

means that whenever EA paid its employees, depending on the day of the payment, the deposit would

be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday,

and/or Friday, the federal employment tax deposit on those payments would be due the following

Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal

employment tax deposit on those payments would be due on the following Friday.  Therefore, the last

11

EXHIBIT L
68

1  deposit for the quarter would be due three business days after the end of the final semi-weekly payment

2  period in which EA paid its employees.

3  Question 13(c): Did EA's failure to file the return between the filing deadline and May 8, 2017, hinder
   or delay the IRS in collecting or receiving money owed to it?

4

5      52.     Answer to Question 13(c): It would be speculative on the part of the

6  IRS to opine on whether EA's failure to file its return "hindered or delayed" the collection or receipt of

7  the "money owed to it".

8  Question 13(d): Did EA's failure to pay a substantial portion of the deposits/tax payments for that
   quarter until March 2018 hinder or delay the IRS in collecting or receiving money owed to it?

9

10     53.     Answer to Question 13(d): It would be speculative on the part of the

11 IRS to opine on whether EA's failure to make payments "hindered or delayed" the collection or receipt

   of the "money owed to it".

12 Question 13(e): What is the basis of EA's liability for the "Additional tax assessed" of $447,405.82,
   with an indicated date of October 16, 2017?  (USA_AVE0106)  On what date was that liability
13 incurred?  How was the amount calculated?

14

15     54.     Answer to Question 13(e): On information and belief, the "additional tax

16 assessed" of $447,405.82 is based on information provided to the IRS by EA in October of 2017

17 through the submission of a Form 941, 941X, or similar document.  The liability would have been

18 incurred at various times during the Form 941 employment tax period ending on December 31, 2015,

19 on the dates which EA paid its employees during that period.  The amount of the assessment was

   calculated by using the information provided by EA to the IRS in October of 2017.

20 Question 13(f): Were the taxes for this quarter ever paid in full, and, if so, on what date was the tax
   indebtedness extinguished?

21

22     55.     Answer to Question 13(f):  This question calls for a legal conclusion by

23 referencing the terms of art "paid in full" and "indebtedness extinguished".  Furthermore, the term

24 "ever" is vague and ambiguous.   Without waiving these objections, the answer is "No."

25 Question 14: Regarding the return due and taxes owed in connection with the 941 return for the quarter
   ending March 31, 2016 (USA_AVE0124, USA_AVE0125):
26 Question 14(a): What was the filing deadline for the return?

27     56.     Answer to Question 14(a): April 30, 2016.

28 Question 14(b): By what date was EA obligated to make the first deposit/tax payment due to the IRS
   for that quarter?  (An approximate date or date range is fine.)

12

EXHIBIT L
69

57.    Answer to Question 14(b): Deposits were due on a semi-weekly basis.  This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday.  Therefore, the first deposit for the quarter would be due three business days after the end of the first semi-weekly payment period in which EA paid its employees.

Question 14(c): By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

58.    Answer to Question 14(c): Deposits were due on a semi-weekly basis.  This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday.  Therefore, the last deposit for the quarter would be due three business days after the end of the final semi-weekly payment period in which EA paid its employees.

Question 14(d): Did EA's failure to file the return between the filing deadline and May 8, 2017, hinder or delay the IRS in collecting or receiving money owed to it?

59.    Answer to Question 14(d): It would be speculative on the part of the IRS to opine on whether EA's failure to file its return "hindered or delayed" the collection or receipt of the "money owed to it".

Question 14(e): Did EA's failure to make any deposits/tax payments between the first deposit/tax payment due date and March 2018 hinder or delay the IRS in collecting or receiving money owed to it?

60.    Answer to Question 14(e): It would be speculative on the part of the IRS to opine on whether EA's failure to make payments "hindered or delayed" the collection or receipt of the "money owed to it".

Question 14(f): What is the basis of EA's liability for the "Additional tax assessed" of $150,668.51, with an indicated date of October 16, 2017?  (USA_AVE0125)  On what date was that liability incurred?  How was the amount calculated?

61.    Answer to Question 14(f): On information and belief, the "additional tax

13

EXHIBIT L
70

assessed" of $150,668.51 is based on information provided to the IRS by EA in October of 2017 through the submission of a Form 941, 941X, or similar document. The liability would have been incurred at various times during the Form 941 employment tax period ending on March 31, 2016, on the dates which EA paid its employees during that period. The amount of the assessment was calculated by using the information provided by EA to the IRS in October of 2017.

Question 14(g): Were the taxes for this quarter ever paid in full, and, if so, on what date was the tax indebtedness extinguished?

62.    Answer to Question 14(g): This question calls for a legal conclusion by referencing the terms of art "paid in full" and "indebtedness extinguished". Furthermore, the term "ever" is vague and ambiguous.  Without waiving these objections, the answer is "No."

Question 15: Regarding the return due and taxes owed in connection with the 941 return for the quarter ending June 30, 2016 (USA_AVE0127, USA_AVE0128):
Question 15(a): What was the filing deadline for the return?

63.    Answer to Question 15(a): July 31, 2016.

Question 15(b): By what date was EA obligated to make the first deposit/tax payment due to the IRS for that quarter?  (An approximate date or date range is fine.)

64.    Answer to Question 15(b): Deposits were due on a semi-weekly basis.  This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday.  Therefore, the first deposit for the quarter would be due three business days after the end of the first semi-weekly payment period in which EA paid its employees.

Question 15(c): By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

65.    Answer to Question 15(c): Deposits were due on a semi-weekly basis.  This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday.  Therefore, the last

14

EXHIBIT L
71

deposit for the quarter would be due three business days after the end of the final semi-weekly payment

period in which EA paid its employees.

Question 15(d): Did EA's failure to file the return between the filing deadline and May 8, 2017, hinder or delay the IRS in collecting or receiving money owed to it?

66.    Answer to Question 15(d): It would be speculative on the part of the

IRS to opine on whether EA's failure to file its return "hindered or delayed" the collection or receipt of

the "money owed to it".

Question 15(e): Did EA's failure to make any deposits/tax payments between the first deposit/tax payment due date and March 2018 hinder or delay the IRS in collecting or receiving money owed to it?

67.    Answer to Question 15(e): It would be speculative on the part of the

IRS to opine on whether EA's failure to make payments "hindered or delayed" the collection or receipt

of the "money owed to it".

Question 15(f): What is the basis of EA's liability for the "Additional tax assessed" of $106,405.92, with an indicated date of October 16, 2017?  (USA_AVE0128)  On what date was that liability incurred?  How was the amount calculated?

68.    Answer to Question 15(f): On information and belief, the "additional tax

assessed" of $106,405.92 is based on information provided to the IRS by EA in October of 2017

through the submission of a Form 941, 941X, or similar document.  The liability would have been

incurred at various times during the Form 941 employment tax period ending on June 30, 2016, on the

dates which EA paid its employees during that period.  The amount of the assessment was calculated by

using the information provided by EA to the IRS in October of 2017.

Question 15(g): Were the taxes for this quarter ever paid in full, and, if so, on what date was the tax indebtedness extinguished?

69.    Answer to Question 15(g): This question calls for a legal conclusion by

referencing the terms of art "paid in full" and "indebtedness extinguished".  Furthermore, the term

"ever" is vague and ambiguous.   Without waiving these objections, the answer is "No."

Question 16: Regarding the return due and taxes owed in connection with the 941 return for the quarter ending September 30, 2016 (USA_AVE0130, USA_AVE0131):
Question 16(a): What was the filing deadline for the return?

70.    Answer to Question 16(a): October 31, 2016.

Question 16(b): By what date was EA obligated to make the first deposit/tax payment due to the IRS for that quarter?  (An approximate date or date range is fine.)

15

EXHIBIT L
72

71.     Answer to Question 16(b): Deposits were due on a semi-weekly basis.  This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday.  Therefore, the first deposit for the quarter would be due three business days after the end of the first semi-weekly payment period in which EA paid its employees.

Question 16(c): By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

72.     Answer to Question 16(c): Deposits were due on a semi-weekly basis.  This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday.  Therefore, the last deposit for the quarter would be due three business days after the end of the final semi-weekly payment period in which EA paid its employees.

Question 16(d): Did EA's failure to file the return between the filing deadline and May 8, 2017, hinder or delay the IRS in collecting or receiving money owed to it?

73.     Answer to Question 16(d):  It would be speculative on the part of the IRS to opine on whether EA's failure to file its return "hindered or delayed" the collection or receipt of the "money owed to it".

Question 16(e): Did EA's failure to make any deposits/tax payments between the first deposit/tax payment due date and March 2018 hinder or delay the IRS in collecting or receiving money owed to it?

74.     Answer to Question 16(e): It would be speculative on the part of the IRS to opine on whether EA's failure to make payments "hindered or delayed" the collection or receipt of the "money owed to it".

Question 16(f): What is the basis of EA's liability for the "Additional tax assessed" of $64,373.31, with an indicated date of October 16, 2017?  (USA_AVE0131)  On what date was that liability incurred?  How was the amount calculated?

75.     Answer to Question 16(f): On information and belief, the "additional tax

16

EXHIBIT L
73

assessed" of $64,373.31 is based on information provided to the IRS by EA in October of 2017 through the submission of a Form 941, 941X, or similar document.  The liability would have been incurred at various times during the Form 941 employment tax period ending on September 30, 2016, on the dates which EA paid its employees during that period.  The amount of the assessment was calculated by using the information provided by EA to the IRS in October of 2017.

Question 16(g): Were the taxes for this quarter ever paid in full, and, if so, on what date was the tax indebtedness extinguished?

76.    Answer to Question 16(g): This question calls for a legal conclusion by referencing the terms of art "paid in full" and "indebtedness extinguished".  Furthermore, the term "ever" is vague and ambiguous.   Without waiving these objections, the answer is "No."

Question 17: Regarding the return due and taxes owed in connection with the 941 return for the quarter ending December 31, 2016 (USA_AVE0133, USA_AVE0134):
Question 17(a): What was the filing deadline for the return?

77.    Answer to Question 17(a):  January 31, 2017.

Question 17(b): By what date was EA obligated to make the first deposit/tax payment due to the IRS for that quarter?  (An approximate date or date range is fine.)

78.    Answer to Question 17(b):  Deposits were due on a semi-weekly basis. This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday.  Therefore, the first deposit for the quarter would be due three business days after the end of the first semi-weekly payment period in which EA paid its employees.

Question 17(c): By what date was EA obligated to make all deposits/tax payments due to the IRS for that quarter?

79.    Answer to Question 17(c): Deposits were due on a semi-weekly basis.  This means that whenever EA paid its employees, depending on the day of the payment, the deposit would be due on the following Wednesday or Friday.  If EA paid its employees on Wednesday, Thursday, and/or Friday, the federal employment tax deposit on those payments would be due the following Wednesday.  If EA paid its employees on Saturday, Sunday, Monday, and/or Tuesday, the federal employment tax deposit on those payments would be due on the following Friday.  Therefore, the last

17

EXHIBIT L
74

1   deposit for the quarter would be due three business days after the end of the final semi-weekly payment

2   period in which EA paid its employees.

3   Question 17(d): Did EA's failure to file the return between the filing deadline and May 8, 2017, hinder
    or delay the IRS in collecting or receiving money owed to it?

4

5       80.    Answer to Question 17(d): It would be speculative on the part of the

6   IRS to opine on whether EA's failure to file its return "hindered or delayed" the collection or receipt of

7   the "money owed to it".

8   Question 17(e): Did EA's failure to make any deposits/tax payments between the first deposit/tax
    payment due date and March 2018 hinder or delay the IRS in collecting or receiving money owed to it?

9

10      81.    Answer to Question 17(e): It would be speculative on the part of the

11  IRS to opine on whether EA's failure to make payments "hindered or delayed" the collection or receipt

    of the "money owed to it".

12  Question 17(f): What is the basis of EA's liability for the "Additional tax assessed" of $114,830.69,
    with an indicated date of October 16, 2017?  (USA_AVE0134)  On what date was that liability
13  incurred?  How was the amount calculated?

14

15      82.    Answer to Question 17(f): On information and belief, the "additional tax

16  assessed" of $114,830.69 is based on information provided to the IRS by EA in October of 2017

17  through the submission of a Form 941, 941X, or similar document.  The liability would have been

18  incurred at various times during the Form 941 employment tax period ending on September 30, 2016,

19  on the dates which EA paid its employees during that period.  The amount of the assessment was

    calculated by using the information provided by EA to the IRS in October of 2017.

20  Question 17(g): Were the taxes for this quarter ever paid in full, and, if so, on what date was the tax
    indebtedness extinguished?
21

22      83.    Answer to Question 17(g):  This question calls for a legal conclusion by

23  referencing the terms of art "paid in full" and "indebtedness extinguished".  Furthermore, the term

24  "ever" is vague and ambiguous.   Without waiving these objections, the answer is "No."

25  ///

    ///
26  ///

27  ///

28  ///

18

EXHIBIT L
75

1    84.    The facts stated in this declaration are true of my own personal knowledge,

2  except as to any matters stated on information and believe, and as to those matters, I am

3  informed and believe them to be true. If called as a witness in this matter, I could and would

4  competently testify to the matters set forth below.

5        Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

6  correct.

7  Dated: _May 16, 2023_                    _Rita John_
                                            RITA GALVAN

8                                           Bankruptcy Specialist
                                            Internal Revenue Service
9                                           Houston, Texas

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

19

EXHIBIT L
76

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
   **LANDAU LAW LLP, 141 South Windsor Blvd., Los Angeles, CA 90004.**

A true and correct copy of the foregoing document entitled (*specify*): ***Trustee's Supplemental Statement Regarding Declaration of Rita Galvan and Request for Order Compelling Responses to Questions*** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **May 23, 2023,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) ____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **May 23, 2023,** I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA PERSONAL DELIVERY:**
Honorable Scott C. Clarkson
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5130 / Courtroom 5C
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 23, 2023 | Hannah Richmond | */s/ Hannah Richmond* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                        **F 9013-3.1.PROOF.SERVICE**

**1.** <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF) (continued)**</u>:

- **Robert J Im**    robert.im@wilsonelser.com, irvineECF@mcglinchey.com
- **Richard A Marshack (TR)**    pkraus@marshackhays.com,
  rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **Brian A Paino**    bpaino@mcglinchey.com, irvineECF@mcglinchey.com
- **Jack A. Reitman**    jareitman@gmail.com,
  srichmond@landaufirm.com;vrichmond@landaufirm.com;avedrova@landaufirm.com
- **John P. Reitman**    jreitman@landaufirm.com,
  vrichmond@landaufirm.com;avedrova@landaufirm.com;hrichmond@landaufirm.com
- **Monica Rieder**    mrieder@landaufirm.com,
  vrichmond@landaufirm.com;avedrova@landaufirm.com;hrichmond@landaufirm.com
- **Najah J Shariff**    najah.shariff@usdoj.gov, USACAC.criminal@usdoj.gov
- **United States Trustee (SA)**    ustpregion16.sa.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**