Case 8:20-ap-01150-SC    Doc 81    Filed 06/21/23    Entered 06/21/23 19:34:13    Desc
Main Document    Page 1 of 17

JOHN P. REITMAN (State Bar No. 80579)
jreitman@landaufirm.com
MONICA RIEDER (State Bar No. 263250)
mrieder@landaufirm.com
LANDAU LAW LLP
141 South Windsor Blvd.
Los Angeles, California 90004
Telephone: (310) 557-0050
Facsimile: (310) 557-0056

Special Litigation Attorneys for
Plaintiff Richard A. Marshack,
Chapter 7 Trustee for Eagan Avenatti, LLP

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>EAGAN AVENATTI, LLP,<br><br>Debtor | Case No. 8:19-bk-13560-SC<br><br>Chapter 7<br><br>Adv. No. 8:20-ap-01150-SC<br><br>**TRUSTEE'S LIST OF QUESTIONS FOR DEPOSITION OF RETIRED IRS SPECIAL AGENT REMOUN KARLOUS** |
| RICHARD A. MARSHACK, CHAPTER 7 TRUSTEE FOR EAGAN AVENATTI, LLP,<br><br>Plaintiff,<br><br>v.<br><br>HONDA AIRCRAFT COMPANY, LLC, a Delaware limited liability company,<br><br>Defendant. | **Continued Hearing Date and Time:**<br>Date:  July 18, 2023<br>Time:  1:30 p.m.<br>Place: Courtroom 5C<br>            411 West Fourth Street<br>            Santa Ana, CA 92701-4593 |

Per the Court's ruling at the June 13, 2023 hearing on the *Motion to Quash Subpoena for Deposition Testimony of Retired IRS Special Agent Remoun Karlous, and for a Protective Order*, filed by the United States of America, on behalf of its agency, the Internal Revenue Service (the "IRS"), in connection with the deposition subpoena issued by plaintiff Richard A. Marshack, Chapter 7 trustee (the "Trustee") for Eagan Avenatti, LLP ("EA"), to former IRS agent Remoun Karlous ("Agent Karlous"), the Trustee hereby respectfully submits a detailed list of the questions the Trustee intends to pose to Agent Karlous at his deposition.  As with any other deposition, the Trustee also expects to ask reasonable follow-up questions based on the responses Agent Karlous provides to the below questions.

**Introductory Statement**

In the following questions:

    a. "A&A" means Avenatti & Associates, APC;

    b. "Avenatti" means EA's former managing partner, Michael Avenatti;

    c. "Affidavit" means Agent Karlous' February 22, 2019 affidavit that was included as ECF pages 34 to 198 of Docket No. 1 in Case No. 8:19-cr-00061-JVS in the United States District Court for the Central District of California;

    d. "Boeing" means The Boeing Company;

    e. "delay" means "to put off, postpone; to stop, detain, or hinder for a time;" or "to cause to be slower or to occur more slowly than normal;"

    f. "EA" means Eagan Avenatti, LLP;

    g. "GB" means Global Baristas LLC, which, according to the Affidavit, was Avenatti's company through which he owned GBUS;

    h. "GBUS" means Global Baristas US LLC, of which, according to the Affidavit, Avenatti was the principal owner and Chief Executive Officer;

    i. "hinder" means "to cause delay, interruption, or difficulty in; hamper; impede;" "to prevent from doing, acting, or happening; stop;" or "to be an obstacle or impediment"; and

    j. "Peoples Bank" means The Peoples Bank of Mississippi.

Questions about conclusions formed by Agent Karlous are asking for conclusions that Agent Karlous formed during or around the time period in which he conducted his investigations and prepared and filed the Affidavit.

Agent Karlous will be provided with a copy of the Affidavit at the deposition and the Affidavit may be used to refresh his recollection in connection with any of the following questions.

**Questions**

1. Were you ever employed by the IRS? If yes:
   a. When did your employment at the IRS begin and end?
   b. What jobs did you hold during your employment with the IRS?
   c. What did those jobs entail?
   d. Did any of those jobs require that you take any special education or training?
   e. What did that education or training include?

2. Were you ever employed by the Criminal Investigation division of the IRS? If yes:
   a. When did your employment with the Criminal Investigation division begin and end?
   b. What was your job function there?
   c. Did you have any special education or training for that job function?
   d. What education or training did you have?

3. Have you ever testified in Court as an IRS Criminal Investigation division agent? If yes:
   a. Did you testify as to your personal knowledge?
   b. Did you testify as to any opinions?
   c. Did you testify as to any conclusions you reached?
   d. Have you ever testified as an expert?
      i. On what subject(s) did you testify as an expert?
      ii. In what court(s) did you testify as an expert?

4. Did you conduct an investigation regarding Avenatti and his companies including EA? If yes:
   a. Did someone assign this task to you?
   b. Did they describe the task that they wanted you to undertake?
   c. What was the scope of the task as described to you?
   d. Did you undertake that work for the IRS Criminal Investigation Division?
   e. As a result of your investigation, did you prepare an affidavit? If yes:
      i. Is the Affidavit the affidavit that you prepared?
5. Did anyone assist you in preparing the Affidavit? If yes:
   a. What was the scope of their work?
   b. Did those persons work under your supervision and control?
   c. Did you review their work?
   d. Did you do anything to verify the accuracy of the work that they did for you? If yes:
      i. What did you do to verify the accuracy of their work?
6. When you finished the Affidavit, did you believe everything in it was true and correct?
7. Since you prepared the Affidavit, have you changed your mind as to anything you said in the Affidavit? If yes:
   a. What have you changed your mind about?
8. In preparing the Affidavit, did you review any documents? If yes:
   a. What types of documents did you look at?
   b. Did you keep a copy of those documents?
   c. What did you do with the documents when you were finished looking at them?
9. In preparing the Affidavit, did you make any notes? If yes:
   a. What happened to those notes?
10. Did anyone else who was working with you make any notes? If yes:

3

        a. What happened to those notes?

11. In preparing for your deposition today, did you review the Affidavit? If you had notes, did you review any of those notes in preparing for this deposition?

12. In preparing for you deposition today, did you talk with any lawyer? If yes:

        a. With whom did you speak?

        b. Did you understand that attorney to be representing you?

13. In the past, have you conducted investigations into the following subjects: money laundering (domestic/international); securities fraud; tax evasion (domestic/international); subscribing to false tax returns? If yes:

        a. How many such investigations have you conducted?

        b. Did you have supervision?

        c. Did you have assistance?

        d. How large and how complex were those investigations?

        e. Did your work on those matters assist you in your investigation of Avenatti or his businesses? If yes:

            i. How did that prior work assist you in this investigation?

14. When you undertook your investigation of Avenatti and EA, were you given an outline of things that the government wanted you to look at? If yes:

        a. What were the things the government wanted you to look at?

        b. What did you do with that outline?

        c. Did you review it in preparing for your deposition today?

15. In the Affidavit, you set forth various statements of fact about Avenatti and his companies including EA.

        a. In stating those facts, did you also set forth the basis for those facts in the Affidavit?

        b. Were the statements you made based in part on your personal observations?

        c. Were the statements based in part on your training and experience? If yes:

            i. What training was that?

    ii. What experience was that?

  d. Were the statements based in part on information you received from law enforcement personnel? If yes:

    i. From what type of law enforcement personnel did you receive information?

    ii. What did they tell you?

    iii. Did you do anything to determine if what they were telling you was accurate?

    iv. What did you do?

  e. Were your statements based in part on information from witnesses? If yes:

    i. Did you receive any information about EA from witnesses?

    ii. From what types of witnesses did you receive information about EA?

    iii. Did you do anything to determine if what the witnesses were telling you was accurate?

    iv. What did you do?

  f. Did you retain any written information that law enforcement personnel or witnesses provided to you? Did you make any notes about what those people told you? If yes:

    i. What did you do with that written information and your notes?

    ii. Did you review them in preparation for your deposition today?

16. To prepare the Affidavit, did you investigate the following subjects:

  a. tax offenses relating to partnership tax filing obligations of EA?

  b. tax offenses relating to payroll tax filing obligations of EA?

  c. tax offenses relating to the payroll tax payment obligations of EA?

  d. fraud-related offenses relating to Avenatti's personal tax obligations? If yes:

    i. Did your investigation into such offenses include review of

5

information regarding EA?

  e. fraud-related offenses relating to loans to EA from Peoples Bank? If yes:

    i. Did your investigation into such offenses involve the review of real or purported IRS returns for EA as submitted to the IRS and to Peoples Bank?

  f. transfers between GB and/or GBUS, on the one hand, and EA, on the other hand? If yes:

    i. Did your investigation include investigation into transfers from or on behalf of GB or GBUS to EA and then from EA to other parties that were made in connection with evasion of the IRS or IRS laws and/or rules?

  g. transfers between EA and Avenatti & Associates? If yes:

    i. Did your investigation include an assessment of the net flow of funds between the two entities?

17. In the course of your investigations, did you ever talk with anyone employed directly or indirectly by Avenatti?

  a. Did any of these people tell you about the types of communications they received from Avenatti?

  b. Did anyone tell you whether Avenatti wanted communications in writing or orally? What directions had Avenatti given regarding communication?

  c. Do you have any other information about Avenatti's preferred communication style (written vs. oral)? What information is that?

18. Did you determine that EA had repeatedly failed to meet its federal tax obligations? If yes:

  a. What was the basis for that determination?

  b. What does "repeatedly" mean in this context?

19. Did you determine that EA repeatedly failed to meet its federal tax obligations despite having generated substantial revenues? If yes:

Landau Law LLP
Attorneys At Law
Los Angeles, California

a. What was the basis for that determination?

20. With regard to federal partnership tax returns for EA for the 2013, 2014, 2015, 2016, and 2017 tax years:

    a. Did EA file partnership tax returns for the 2013, 2014, 2015, 2016, and 2017 tax years?

    b. Did you determine that EA appeared to have received approximately $137,890,000 of deposits into its bank accounts in those years? If yes:

        i. What was the basis for that determination?

    c. Did you determine whether EA was obligated to file partnership tax returns for the 2013 through 2017 tax years?

        i. If so, what was the basis for that determination?

    d. Did you reach a conclusion as to why Avenatti caused EA not to file partnership tax returns?

        i. If so, what was that conclusion, and what was the basis for it?

    e. Did EA's failure to file those tax returns make it more difficult for the IRS to (i) determine the existence and scope of Avenatti's income tax obligations arising from money paid by EA to Avenatti or on his behalf and/or (ii) collect one or more amounts Avenatti owed to the IRS?

21. With regard to federal payroll tax returns for EA for quarters in 2014, 2015, 2016, and 2017:

    a. Did you determine that EA was obligated to file payroll tax returns on a quarterly basis throughout those years?

        i. If so, what was the basis for that determination?

    b. Were there quarters in which EA failed to file payroll tax returns?

        i. If so, what were those quarters?

    c. Did you reach a conclusion as to why Avenatti caused EA not to file payroll tax returns?

        i. If so, what was that conclusion, and what was the basis for it?

7

    d. Did EA's failure to file payroll tax returns make it more difficult for the IRS to (i) determine the scope of EA's payroll tax obligations and/or (ii) collect one or more amounts EA owed to the IRS?

22. With regard to federal payroll taxes owed by EA for quarters in 2015, 2016, and 2017:

    a. Did you determine that EA failed to pay approximately $2.4 million in payroll taxes that it was obligated to pay to the IRS?

        i. If so, what was the basis for that determination?

    b. Did you determine that EA had sufficient funds to make those payments?

        i. If so, what was the basis for that determination?

    c. Did you determine that the $2.4 million in unpaid federal payroll taxes included approximately $1.279 million in trust fund taxes? If yes:

        i. Is that money that EA withheld from EA employees?

        ii. What was the basis for that determination?

    d. Were those trust fund tax moneys required to be held by EA in a separate bank account? If yes:

        i. Did you check to see whether EA held that money in a separate bank account?

        ii. If so, did you determine that EA held that money in a separate bank account?

        iii. What was the basis for that determination?

    e. Did you reach a conclusion as to why EA failed to pay $2.4 million in payroll taxes?

        i. If so, what was that conclusion, and what was the basis for it?

    f. Did EA's failure to pay $2.4 million in payroll taxes as they became due hinder or delay the IRS in its collection of those taxes?

23. Did you reach a conclusion that Avenatti had lied to the IRS in connection with EA's payroll taxes? If yes:

      a. If so, what was the basis for that conclusion (i.e., how did you learn that Avenatti had lied to the IRS)?

      b. Did you determine that lie occurred during a field visit made by an IRS revenue officer to EA's office on or around October 8, 2015?

      c. Did you reach a conclusion as to whether Avenatti lied to the IRS in order to make it more difficult for the IRS to determine what taxes were owed to the IRS by EA and/or to collect those taxes?

          i. If so, what was that conclusion, and what was the basis for that conclusion?

24. Did you ever learn that Paychex had ceased to be responsible for making payroll tax payments for EA in January 2015?  If yes:

      a. How did you learn that?

25. Did you reach a conclusion that Avenatti falsely stated to the IRS that a third party, Paychex, was required to make payroll tax payments to the IRS on EA's behalf, at a time when Avenatti knew that Paychex was no longer responsible for those payments?  If yes:

      a. What was the basis for that conclusion?

      b. Did you reach a conclusion as to whether Avenatti made that false statement to the IRS in order to make it more difficult for the IRS to determine what taxes were owed to the IRS by EA and/or to collect those taxes?

          i. If so, what was that conclusion, and what was the basis for that conclusion?

26. Do you recall a transaction where Boeing purchased two coffee "kiosks" operated by GBUS at Boeing and associated equipment?  If yes:

      a. Do you recall who the seller was supposed to be, based on who owned/operated the assets?

          i. Who was that?

        ii. Did the IRS have a lien on the assets of that entity at that time?

        iii. If the purchase money had been transferred from Boeing to that entity, would the IRS have collected that money due to its lien?

    b. Did you learn that Avenatti had caused instructions to be given to Boeing to wire the purchase money to a trust account of EA instead of to the owner of the assets?

        i. Do you recall the amount that money that was transferred to EA?

        ii. Did you determine what happened to the money after EA received it?

        iii. If so, what happened?

    c. Did the transfer of the money from Boeing to EA (instead of to the owner of the assets) and from EA to A&A hinder the IRS in collecting amounts owed to it?

    d. Did you reach a conclusion as to why Avenatti had the money sent to EA instead of to the owner of the assets?

        i. What was that conclusion, and what was the basis for that conclusion?

27. To your knowledge, did the IRS ever initiate a collection case against EA for its failure to file federal payroll tax returns and pay payroll taxes?

    a. Based on your experience as a CI, under what circumstances does the IRS open a collection case (i.e., what are the criteria for doing so)?

    b. Does the opening of a collection case indicate that the IRS has been delayed in receiving funds that are owed to it?

28. Were you aware that a bankruptcy case had been commenced against EA in March 2017?

29. Do you recall if at the time of its bankruptcy in March 2017 EA owed the IRS federal payroll taxes? If EA did owe the IRS federal payroll taxes at that time:

    a. Do you recall the amount of those taxes?

      b. Do you recall if some of those taxes were paid?

      c. Were all of those taxes paid?

      d. Did you make a determination as to where the money came from that was used by EA to pay the payroll taxes to the IRS? If yes:

          i. Where did you determine that money came from?

30. Did you analyze money transfers between EA and A&A? If yes:

      a. For what time period did you make that analysis?

      b. Did you reach a conclusion about the net flow of funds between those entities?

          i. If so, what was your conclusion and what was the basis for it?

31. Did you review Avenatti's 2009 federal income tax return? If yes:

      a. Did that return reflect income received from EA?

      b. Do you recall the amount of federal income taxes owed?

      c. Did Avenatti pay those taxes when due?

32. Did you review Avenatti's 2010 federal income tax return? If yes:

      a. Did that return reflect income received from EA?

      b. Do you recall the amount of federal income taxes owed?

      c. Did Avenatti pay those taxes when due?

33. Did the IRS place a lien on Avenatti's residence in 2015? If yes:

      a. Do you know why the IRS placed a lien on Avenatti's residence?

      b. Were Avenatti's 2009 and 2010 federal income taxes paid as a result of the lien on the house?

      c. Did Avenatti's failure to voluntarily pay his taxes when they were due hinder the IRS from collecting money it was owed from Avenatti?

34. Did you reach a conclusion as to whether Avenatti was obligated to file personal federal income tax returns for 2011 through 2017? If yes:

      a. What was your conclusion and what was the basis for it?

      b. If you concluded that Avenatti was obligated to file personal federal income

11

tax returns for 2011 through 2017:

    i. Do you know if those returns were ever filed?

c. If Avenatti failed to file personal federal income tax returns that were due for 2011 through 2017, did you reach a conclusion as to why Avenatti failed to filed those income tax returns?

    i. If so, what was that conclusion, and what was the basis for it?

d. Did Avenatti's failure to income tax returns that were due for 2011 through 2017 make it more difficult for the IRS to determine and/or collect amounts owed to it?

35. Did you reach a conclusion as to whether Avenatti owed federal income taxes for 2011 through 2017? If yes:

    a. What was your conclusion and what was the basis for it?

    b. If you concluded that Avenatti owed federal income taxes for those years:

        i. Do you know if those taxes were ever collected?

        ii. If so, when were they collected?

        iii. Were all the taxes collected?

    c. If not all of the taxes owed were paid by Avenatti, did you reach a conclusion as to why Avenatti failed to pay federal income taxes owed for 2011 through 2017?

        i. If so, what was that conclusion, and what was the basis for it?

    d. Did Avenatti's failure to pay the federal income taxes he owed for 2011 through 2017 hinder or delay the IRS in collecting money it was owed from Avenatti?

36. Did you make a determination as to how much money Avenatti received from EA and A&A between 2011 and 2017? If yes:

    a. What was the amount received?

    b. Did you make a determination as to how much money Avenatti received from EA specifically?

i. If so, what was the amount received from EA specifically?

37. Did you determine the net amount of money transferred from EA to A&A between 2011 and 2017? If yes:

   a. How much did you determine was the net amount received by A&A from EA?
   b. Did you determine to what use or uses A&A put that money?
      i. If so, what was that use or uses, and what was the basis for that determination?
   c. Did you determine whether Avenatti reported that money as part of his income to the IRS?
   d. If Avenatti failed to report the money received by A&A from EA as income, did you reach a conclusion as to why Avenatti did so?
      i. If so, what was that conclusion and what was the basis for it?

38. Did you determine whether EA ever paid any personal expenses for Avenatti? If yes:

   a. How did you determine that?
   b. Did you determine an amount of personal expenses EA paid for Avenatti between 2011 and 2017?
   c. Can you provide an estimate of that amount?
   d. Did Avenatti ever report those payments to the IRS as his income?
   e. Did Avenatti ever pay taxes to the IRS on that income?
   f. Did you reach a conclusion as to whether Avenatti ever paid all the taxes that were due on the payments EA made for his personal benefit between 2011 and 2017?
      i. If so, what was that conclusion and what was the basis for it?
   g. Did you reach a conclusion as to why Avenatti had EA pay personal expenses for him, instead of having EA distribute money to him and his using that money to pay his personal expenses?
      i. If so, what was that conclusion and what was the basis for it?

13

  h. Did EA's payment of Avenatti's personal expenses, as opposed to EA distributing money to Avenatti and having him pay those expenses himself, make it more difficult for the IRS to determine Avenatti's income and the amount of federal income taxes owed?

  i. Did EA's payment of Avenatti's personal expenses, as opposed to EA distributing money to Avenatti and having him pay those expenses himself, make it more difficult for the IRS to collect taxes Avenatti owed to it?

39. Did you reach a conclusion as to whether Avenatti evaded the assessment and collection of federal income taxes between 2011 and 2017?

  a. If so, what was that conclusion and what was the basis for it?

40. If you concluded that Avenatti evaded the assessment and collection of federal income taxes between 2011 and 2017, did you reach a conclusion as to whether Avenatti did so, in part, by using EA to hide and conceal his personal income?

  a. If so, what was that conclusion and what was the basis for it?

  b. Are you aware of any specific actions by EA that had the effect of hiding and concealing Avenatti's personal income and/or assisting Avenatti in evading the assessment and collection of federal income taxes between 2011 and 2017?

    i. If so, what are those actions?

41. Did you review purported federal income tax returns for Avenatti and EA that Avenatti provided to Peoples Bank to secure a loan for EA? If yes:

  a. Did you compare the purported returns provided to Peoples Bank with the IRS' records of Avenatti's and EA's tax returns?

  b. Were there discrepancies between the purported returns provided to Peoples Bank and the IRS' records?

    i. If so, what were those discrepancies?

  c. Was the gross income information for EA on the purported return provided to Peoples Bank different from the gross income information for EA on the

14

actual return filed with the IRS, and, if so, in what way?

d. Did you reach a conclusion regarding the purported federal income tax returns Avenatti provided to Peoples Bank?

    i. If so, what was that conclusion and what was the basis for it?

e. Did you reach a conclusion as to why Avenatti provided purported federal income tax returns for himself and EA to Peoples Bank that did not match the IRS' records (either because a different return was filed with the IRS or because no such return was filed with the IRS)?

    i. If so, what was that conclusion and what was the basis for it?

Dated: June 21, 2023

LANDAU LAW LLP

By:   /s/ John P. Reitman
      John P. Reitman
Special Litigation Attorneys for
Plaintiff Richard A. Marshack,
Chapter 7 Trustee for Eagan Avenatti, LLP

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
**LANDAU LAW LLP, 141 South Windsor Blvd., Los Angeles, CA 90004.**

A true and correct copy of the foregoing document entitled (*specify*): **_Trustee's List of Questions for Deposition of Retired IRS Special Agent Remoun Karlous_** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **June 21, 2023,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Robert J Im**   robert.im@wilsonelser.com, irvineECF@mcglinchey.com
- **Richard A Marshack (TR)**   pkraus@marshackhays.com, rmarshack@iq7technology.com;ecf.alert+Marshack@titlexi.com
- **Brian A Paino**   bpaino@mcglinchey.com, irvineECF@mcglinchey.com
- **Jack A. Reitman**   jareitman@gmail.com, srichmond@landaufirm.com;vrichmond@landaufirm.com;avedrova@landaufirm.com
- **John P. Reitman**   jreitman@landaufirm.com, vrichmond@landaufirm.com;avedrova@landaufirm.com;hrichmond@landaufirm.com
- **Monica Rieder**   mrieder@landaufirm.com, vrichmond@landaufirm.com;avedrova@landaufirm.com;hrichmond@landaufirm.com
- **Najah J Shariff**   najah.shariff@usdoj.gov, USACAC.criminal@usdoj.gov
- **United States Trustee (SA)**   ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| June 21, 2023 | Hannah Richmond | */s/ Hannah Richmond* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                      **F 9013-3.1.PROOF.SERVICE**